Susan JASINSKAS, Widow of Frank B. Jasinskas, Deceased, Petitioner,

v.

BETHLEHEM STEEL CORPORATION, and Director, Office of Workers' Compensation Programs, Benefits Review Board, United States Department of Labor, Respondents.

No. 83–1359.

United States Court of Appeals, First Circuit.

Argued Jan. 3, 1984.

Decided May 29, 1984.

Lillian C. Levine, Wakefield, Mass., with whom Law Offices of Bernard Cohen, Inc., Brockton, Mass., was on brief, for petitioner.

Marianne Demetral Smith, Washington, D.C., Atty., with whom Francis X. Lilly, Deputy Sol. of Labor, and Donald S. Shire, Associate Sol., U.S. Dept. of Labor, Washington, D.C., were on brief, for Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor.

Neal C. Tully, Boston, Mass., with whom Charles E. Colson, and Cargill, Masterman & Culbert, Boston, Mass., were on brief, for Bethlehem Steel Corp.

Before COFFIN, ALDRICH and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Petitioner, Mrs. Susan Jasinskas, filed a claim for death benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* She stated that her husband's death from a heart attack in February 1977 was causally related to asbestosis he contracted from working as a pipefitter in a shipyard for Bethlehem Steel Corporation from 1941 to around 1946. An Administrative Law Judge ("ALJ") awarded her compensation. The Benefits Review Board, however, reversed for lack of "timely notice" to Bethlehem. Petitioner claims that the Review Board erred since "substantial evidence" supported the ALJ's decision. *See* 33 U.S.C. § 921(b)(3) ("findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence").

The relevant facts are as follows: Mrs. Jasinskas's husband left the Bethlehem shipyard in 1945 or 1946. He worked in a shoe factory and in a bakery until he suffered a heart attack in 1970. He then stopped working completely. He had several more heart attacks over the next few years and died in 1977. His death certificate listed the causes of his death as "arteriosclerotic heart disease—sudden death—natural causes." Two years before his death, Mrs. Jasinskas learned from his doctor that her husband had asbestosis. Because she was afraid to make her husband nervous, she did not tell him. In January or February 1978, about a year after her husband died, she learned from a television program that asbestos "is a poison." She then saw a lawyer in April 1978 and filed a claim for benefits in early May 1978.

The relevant statute requires a beneficiary to give an employer

> [n]otice of ... death ... within thirty days after the ... beneficiary is aware or in the exercise of reasonable diligence should have been aware of a relationship between the ... death and the employment.

33 U.S.C. § 912(a). We must consider whether the Review Board correctly reversed the ALJ's award for lack of substantial evidence showing compliance with this provision.

At the outset petitioner argues that we should view the record through the lens of a special statutory presumption, 33 U.S.C. § 920(b), which says, "it shall be presumed, in the absence of substantial evidence to the contrary ... [t]hat sufficient notice of such claim has been given." Evidently, the Board and courts are not completely certain about whether, or how, this presumption is meant to apply in cases like this one. *Compare, e.g., Stevenson v. Linens of the Week*, 688 F.2d 93 (D.C.Cir.1982) *with Jackson v. Ingalls Shipbuilding Division, Litton Systems, Inc.*, 15 B.R.B.S. 299, 301–02 (1983). One might ask in this case, for example, whether the presumption is meant to lead the ALJ to conclude that the employee gave the employer notice before early May 1978 or whether it is meant to suggest (despite lack of proper notice) actual "employer ... knowledge"—a special ground for excusing lack of notice when the employer has not been prejudiced, 33 U.S.C. § 912(d)(1). We need not delve into these matters, however, for here, insofar as the presumption applies, it has been adequately rebutted. Over thirty years passed between the time Mr. Jasinskas worked for Bethlehem and the time he died; the record contains no indication that Bethlehem knew anything about him or his whereabouts during this period; and Bethlehem's record exhibit 1, its "First Report of Accident or Occupational Illness," states that the "earliest date ... employer knew of [the death]" was "May 4, 1978." Nothing in the record contradicts this statement. In fact, petitioner says in her brief that she "is not claiming that Bethlehem Steel [actually] knew of her husband's asbestos-related death" before May 4. Thus, there is, in respect to notice or employer knowledge before May 1978, (in the statute's words) "substantial evidence to the contrary."

Since no one disputes the fact that the employer had actual notice in early May, the issues are whether the May notice was within thirty days of the time Mrs. Jasinskas was "aware or in the exercise of reasonable diligence should have been aware" of the causal connection between employment and death, and, if not, whether her delay was excusable. We conclude that the record on these issues is sufficiently unclear to require a remand to the ALJ.

We remand the case for several reasons. First, since the ALJ believed that Mrs. Jasinskas gave timely notice, he did not consider another provision of the Act, 33 U.S.C. § 912(d)(2), that might have justified granting her benefits despite her lateness. This section allows the ALJ to excuse a failure to give proper notice "on the ground that for some satisfactory reason such notice could not be given ...." *Id.* Considering the petitioner's age, her language difficulties (suggested by the record transcript), the causes listed on the death certificate, and the fact that the record

indicates that the television program made her aware only that asbestos "is a poison," not that it could lead to heart failure, the ALJ might have decided that there was such reason here—particularly since the additional two or three months' delay does not appear to have prejudiced Bethlehem. *See Smith v. Aerojet-General Shipyards, Inc.,* 647 F.2d 518, 525 (5th Cir.1981); *Bethlehem Steel Co. v. Parker,* 163 F.2d 334, 336 (4th Cir.1947).

The Review Board did not properly consider this issue. It decided simply to reverse, rather than remand, because the petitioner "was aware of the employer's identity ... [and] the administrative law judge [did not] state any other basis for excusing claimant's failure to give timely notice." This is not surprising, for the ALJ believed that the May 4 notice was adequate. In other situations where the Board has found the ALJ's findings on excuse unclear, it has remanded for further consideration. *Owens v. Newport News Shipbuilding & Dry Dock Co.,* 11 B.R.B.S. 409, 417–18 (1979); *Mattox v. Sun Shipbuilding & Dry Dock Co.,* 11 B.R.B.S. 333, 336–39 (1979). We do not see how it can do less when the ALJ made no findings at all.

Allowing the Board to decide this issue as it did here would effectively permit it to make findings of fact itself. The Review Board, however, unlike most other agency appeal boards, does not possess "all the powers which [the agency] would have in making the original decision ...." 5 U.S.C. § 557(b). Rather, in this area, it inherits the review powers previously possessed by district courts when they examined the findings of Labor Department Deputy Commissioners (now ALJs). *Presley v. Tinsley Maintenance Service,* 529 F.2d 433, 436 (5th Cir.1976). Those review powers are limited by statute, 33 U.S.C. § 921(b)(3) (ALJ's "findings of fact ... shall be conclusive if supported by substantial evidence"), and by case law, *Director, Office of Workers' Compensation Programs v. Cargill, Inc.,* 718 F.2d 886, 888 (9th Cir.1983) (only ALJ, not Board, may make findings of fact); *Director, Office of Workers' Compensation Programs v.*

*Newport News Shipbuilding & Dry Dock Co.,* 676 F.2d 110, 115 (4th Cir.1982) (same); *see O'Keefe v. Smith, Hinchman & Grylls Associates, Inc.,* 380 U.S. 359, 362, 85 S.Ct. 1012, 1014, 13 L.Ed.2d 895 (1965) (per curiam) ("[I]nferences drawn by the [ALJ] are to be accepted unless they are irrational or 'unsupported by substantial evidence ....'") (quoting *O'Leary v. Brown-Pacific-Maxon, Inc.,* 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951)).

The Review Board, in fact, has disclaimed the power to make findings of fact itself in circumstances like this one. *Owens v. Newport News Shipbuilding & Dry Dock Co.,* 11 B.R.B.S. at 418 ("[A]lthough we could perhaps review the record on our own and make the appropriate findings ..., we would be engaging in an initial finding of fact, contrary to our standard of review."). Consequently, we owe special respect, not to the fact-finding of the Review Board, but to the fact-finding of the ALJ (as, for example, the Supreme Court typically defers to the fact-finding of the district court, not a reviewing appellate court, *see, e.g., Pullman-Standard v. Swint,* 456 U.S. 273, 285–93, 102 S.Ct. 1781, 1788–92, 72 L.Ed.2d 66 (1982)). In similar situations when the ALJ has made no findings on excuse, other courts have remanded with instructions to secure such findings. *Sun Shipbuilding & Dry Dock Co. v. Walker,* 590 F.2d 73, 77 (3d Cir.1978); *Bartges v. Woodworth,* 452 F.2d 1383 (D.C.Cir.1971); *accord Director, Office of Workers' Compensation Programs v. Cargill, Inc.,* 718 F.2d at 888; *Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co.,* 676 F.2d at 115. We do the same.

A second reason supporting remand to the ALJ in this case is that the ALJ's decision as to notice, read in light of the record, is unclear. The ALJ wrote:

[Mrs. Jasinskas's] testimony with respect to her filing of a claim for death benefits was not particularly clear although I am inclined to give her the benefit of the doubt. She testified that she filed after

seeing a television program which indicated that "asbestosis is a poison," thus indicating that at that time she became aware of the fact that asbestosis contributed to her husband's death. Although her testimony could also have been construed to indicate that the television program apprised her of her legal right to file a claim, resolving doubts in her favor, I conclude that she has a valid claim for death benefits as it is not barred by the statute of limitations.

The Review Board noted that the ALJ "did not specify why he found that claimant had been given timely notice." Rather than remand, however, it canvassed the record itself to see if substantial evidence supported this finding. Relying exclusively on the ALJ's statement that Mrs. Jasinskas's testimony "indicated" that she became aware that asbestos contributed to her husband's death when she saw the television program and on her own uncontradicted testimony that she had seen the program several months before filing her claim, the Board reversed.

We believe, in light of the Review Board's limited powers to review ALJ factfinding, that it should have remanded the case, not reversed it. The record does not *compel* a finding of "awareness" of the causal connection. In fact, the major difficulty with the ALJ's opinion is, as the Board noted, that it does not properly provide the "reasons or basis" for its legal conclusion. *See* 5 U.S.C. § 557(c)(3)(A). Why did the ALJ believe that Mrs. Jasinskas's notice was timely? The ALJ could simply have made a mistake of law. He could have thought that although Mrs. Jasinskas became "aware" of the causal connection when she saw the television program, the relevant event occurred later when she became aware that she had a legal claim. This is one natural reading of the ALJ's opinion. Mrs. Jasinskas's words, in fact, support this interpretation. When asked by her own counsel "When did you first became aware of the fact that you might have a claim against Bethlehem Steel?", she answered, "When they put on television—I didn't know nothing. I never

made a claim until I saw on the television that it is a poison. That is the time I put the claim." Yet, the Board did not explicitly adopt this reading of the opinion. And the record makes us uncertain that the ALJ simply made what in context would have appeared a very obvious mistake. The words of the statute are clear; they speak of the time the beneficiary learned of "a relationship between the ... death and the employment." The ALJ was familiar with the statute and with this language in particular. Moreover, the parties focused his attention on the correct legal question—the question of causal relationship.

Another basis for the ALJ's finding is possible: namely, that although Mrs. Jasinskas's words "indicated" that the television program told her about the causal connection, her legal rights, or both, "resolving doubts in her favor," the ALJ concluded that she meant neither. Mrs. Jasinskas's lack of education and apparent difficulty with English made her testimony often garbled and inconsistent. For instance, she testified that she "put the claim" when she saw the program on television. She apparently telescoped the critical three months between her viewing the program in January or February 1978 and her filing of the claim in May 1978. Consider also the following interchange with her counsel:

Q. When were you first aware of the fact that [your husband's] death ... was causally or might be causally related to his asbestos exposure at Bethlehem Steel?

A. When the doctor told me.

Q. The doctor [who] told you he had asbestosis.

A. That is right.

The ALJ considered this interchange insufficient to show an awareness of the causal connection two years before Mr. Jasinskas died, because in context the words did not mean what they seemed to say. He may also have considered the exchange about the television program insufficient to show such awareness. Indeed, the ALJ would

have had adequate basis for considering either interchange insufficient to show the requisite "awareness." After all, the requisite causal connection is one between "asbestosis" and death *through heart disease.* One might, for example, reasonably believe that a television program about asbestosis could fail to mention this possible consequence or mention it only to the point where a vague suspicion would be aroused in the mind of the viewer. *See Fulks v. Avondale Shipyards, Inc.,* 10 B.R.B.S. 340, 347 (1980) (generalized suspicions unsupported by medical interpretations do not establish sufficient "awareness" to set limitations period running when condition involves complex medical causality), *aff'd,* 637 F.2d 1008 (5th Cir.1981).

The briefs before the ALJ indicate that the parties did not argue the notice issue in much detail. Rather, they focused on the issue of the causal connection between Mr. Jasinskas's employment and his death. At the outset, in fact, Bethlehem's counsel told the ALJ, "[w]e particularly raise the failure of prompt notice in this case ..., but the most salient defense will be the causal relationship." Thus, the parties and the ALJ might also have devoted less than requisite care to the question.

Still, we do not believe it appropriate to parse the language too finely. We simply conclude that the ALJ's opinion and the record are too unclear to interpret with any certainty. This is not sufficient for review, *Atchison. T. & S.F. Ry. v. Wichita Board of Trade,* 412 U.S. 800, 807, 93 S.Ct. 2367, 2374, 37 L.Ed.2d 350 (1973) ("We must know what a[n agency's] decision means before the duty becomes ours to say whether it is right or wrong.") (quoting *United States v. Chicago, M., St. P. & P. Ry.,* 294 U.S. 499, 511, 55 S.Ct. 462, 467, 79 L.Ed. 1023 (1935)); *SEC v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943) ("the grounds upon which the administrative agency acted [must] be *clearly* disclosed") (emphasis added), either by us or the Board.

Under these circumstances we must remand. Although two issues—"awareness" and "excuse"—exist, the latter need not be addressed if the former is resolved favorably to the petitioner. Moreover, although the "excuse" issue will require an evidentiary hearing, resolution of the "awareness" issue may be achieved simply by requesting clarifying findings and conclusions from the ALJ on the existing record. The precise procedures and their sequence are more appropriately determined by the Board.

*The Board's order is vacated and the case is remanded to the Board with instructions to order further proceedings consistent with this opinion.*