Dolly B. HUNTER, widow of Charles
H. Hunter, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, BEN-
EFITS REVIEW BOARD, Respondent.

No. 85–2359.

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1986.

Decided Oct. 23, 1986.

Rehearing and Rehearing En Banc
Denied Nov. 28, 1986.

Daniel L. Manring (Clifford M. Farrell;
Barkan & Neff Co., L.P.A., Columbus,
Ohio, on brief), for petitioner.

Sylvia Kaser, U.S. Dept. of Labor;
George R. Salem, Deputy Sol., Donald S.
Shire, Associate Sol., J. Michael O'Neill,
Counsel for Appellate Litigation, Wash-
ington, D.C., on brief, for respondent.

Before HALL and CHAPMAN, Circuit
Judges, and BUTZNER, Senior Circuit
Judge.

CHAPMAN, Circuit Judge:

The single issue presented is whether the
mere evidence that a person worked in coal
mines for more than ten years and died of

lung cancer is sufficient to invoke the presumption of death due to pneumoconiosis under § 411(c)(2) of the Black Lung Benefits Act, 30 U.S.C. § 921(c)(2) (1982), and the applicable regulation, 20 C.F.R. § 410.-462 (1986). The administrative law judge found that the evidence was sufficient and, finding no evidence to rebut the presumption, granted benefits. The Benefits Review Board (BRB or Board) found that the evidence was insufficient and reversed. Claimant Dolly B. Hunter petitioned this court to review the Board's decision, and we affirm.

I

Claimant Dolly B. Hunter is the widow of Charles Hunter, who died on January 31, 1966, at the age of forty-five. Hunter was employed as a motorman by Peabody Coal Company and Bethlehem Steel Corporation Coal Mines from 1939 through 1952. It is uncontested that he meets the ten-year employment qualification for benefits under § 411(c)(2) of the Act.

The medical evidence of record consists of (1) a medical history form completed on January 22, 1966; (2) a progress record compiled from January 24 to January 31, 1966, while Mr. Hunter was a patient at Mount Carmel Medical Center in Columbus, Ohio; and (3) a death certificate dated January 31, 1966. The medical history reveals that lung cancer was diagnosed in September 1965 and that Mr. Hunter had subsequently undergone radiation treatment. The progress record documents Mr. Hunter's hospital care for metastatic lung cancer in the week before his death. It indicates that Mr. Hunter was admitted and treated for pain only—no surgical or diagnostic procedures were performed. Finally, the death certificate lists the sole cause of death as carcinoma of the lung. No autopsy was performed. There was no information in any of the medical records as to the existence of pneumoconiosis. Further, Mrs. Hunter testified that, to her knowledge, no physician had ever diagnosed her husband as having pneumoconiosis.

The ALJ awarded benefits to Mrs. Hunter in a decision and order of November 19, 1982. The ALJ concluded that Mrs. Hunter was entitled to the benefit of the rebuttable presumption of death due to pneumoconiosis conferred by § 411(c)(2) of the Act and § 410.462 of the corresponding regulations since Mr. Hunter had worked for at least ten years as a miner and had died from lung cancer. In so ruling, the ALJ placed primary reliance on the BRB's decision in *Pyle v. Alleghenay River Mining Co.*, 2 Black Lung Rep. 1–1143 (1981), in which the Board ruled that lung cancer is *per se* a "chronic disease of the lung" and therefore, under the definition in § 410.462, a "respirable disease" sufficient to invoke the rebuttable presumption.

Once the presumption was invoked, the ALJ shifted the burden of proof to the Director to show that the evidence concerning the miner's death by lung cancer "did not suggest a reasonable possibility that death was due to pneumoconiosis." 20 C.F.R. § 410.462(b). The Director relied primarily upon the fact that none of the hospital records mentioned the presence of pneumoconiosis. The ALJ found that this evidence was insufficient to rebut the statutory presumption and awarded benefits to Mrs. Hunter.

On appeal, the Board overruled its prior decision in *Pyle* to the extent that *Pyle* held that lung cancer is always a "chronic disease of the lung" for purposes of invoking the presumption and adopted the rule that the "chronic nature of lung cancer is a factual determination to be made by the ALJ on a case-by-case basis." Thus, the Board held that the burden is upon a claimant, in each case arising under § 411(c)(2) and 20 C.F.R. § 410.462, to establish the chronic nature of the miner's lung cancer. The Board reasoned that the rule expressed in *Pyle* was based on an incomplete medical and statistical foundation and on the lack of a regulatory definition of the word "chronic."

The BRB then reversed the ALJ's finding that the presumption was invoked, ruling that the medical evidence was not suffi-

cient to invoke the presumption because the "chronic" nature of the miner's lung cancer was not established. Finally, the BRB ruled that even if the presumption had been properly invoked, it would have been rebutted by the hospital records, which made no mention of pneumoconiosis. According to the Board, this lack of medical evidence established that there was no reasonable possibility that death was due to pneumoconiosis. Thus, the Board reversed the award of benefits. Mrs. Hunter has petitioned this court for review of the Board's order.

## II

The question presented is the proper interpretation of 20 C.F.R. § 410.462. This regulation was promulgated pursuant to 30 U.S.C. § 921(c)(2), which provides in pertinent part: "If a deceased miner was employed for ten years or more in one or more coal mines and died from a respirable disease there shall be a rebuttable presumption that his death was due to pneumoconiosis." Since there is no statutory definition of "respirable disease," the apparent purpose of § 410.462 was to explain when death will be found due to a respirable disease. The regulation provides:

*Presumption relating to respirable disease.*

(a) Even though the existence of pneumoconiosis as defined in § 410.110(*o*)(1) is not established as provided in § 410.454(a), if a deceased miner was employed for 10 years or more in the Nation's coal mines and died from a respirable disease, it will be presumed, in the absence of evidence to the contrary, that his death was due to pneumoconiosis arising out of employment in a coal mine.

(b) Death will be found due to a respirable disease when death is medically ascribed to a chronic dust disease, or to another chronic disease of the lung. Death will not be found due to a respirable disease where the disease reported does not suggest a reasonable possibility that death was due to pneumoconiosis. Where the evidence establishes that a deceased miner suffered from pneumoconiosis or a respirable disease and death may have been due to multiple causes, death will be found due to pneumoconiosis if it is not medically feasible to distinguish which disease caused death or specifically how much each disease contributed to causing death.

The primary focus of the parties' arguments has been upon the correct interpretation of the first sentence of § 410.462(b). The parties agree that a claimant wishing to invoke the presumption must show that the miner's death was due to a respirable disease and that such a showing must include proof that death is medically ascribed to a chronic disease of the lung. The Director and claimant differ, however, on how to apply this language to the disease of lung cancer. The claimant, citing the earlier Board case *Pyle v. Alleghenay Mining Co.*, contends that lung cancer is *per se* a "chronic disease of the lung." Thus, a claimant need only show ten years of coal mine employment and the presence of lung cancer to invoke the presumption of death due to a respirable disease under § 410.-462. The Director, on the other hand, takes the position that there can be both acute and chronic lung cancer, and that the § 410.462 presumption is only available to those claimants who can prove that the particular miner's cancer was "chronic."

■ As an initial matter, we recognize that courts should defer to an administrative agency's interpretation of its own regulations unless that interpretation is "plainly erroneous or inconsistent with the regulation." *United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977), *quoting Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *Allen v. Bergland,* 661 F.2d 1001, 1004 (4th Cir.1981). While the Benefits Review Board has recently changed its interpretation of the first sentence of § 410.462(b), we nonetheless cannot say that the Board's current interpretation is plainly erroneous or inconsistent with the regulation's language. Section 410.462(b) requires a claimant to show that

the miner's fatal disease can be medically ascribed to a chronic disease of the lung. The regulations do not define "chronic disease of the lung." Moreover, as the Board has found, the medical and statistical evidence concerning the chronic nature of lung cancer is unsettled and subject to change. Given these facts, we find that the Board's requirement that claimants show the chronic nature of lung cancer on a case-by-case basis is not unreasonable or inconsistent with the language of the regulation.

■ Claimant contends that this court has stated that lung cancer is chronic as a matter of law and relies on a footnote in *Rose v. Clinchfield Coal Co.*, 614 F.2d 936 (4th Cir.1980). However, our understanding of the footnote in question is quite different.[1] In *Rose*, the Hearing Officer below had made the "implicit finding" that the coal miner's lung cancer constituted a "totally disabling respiratory or pulmonary impairment" under 30 U.S.C. § 921(c)(4). The Board, in overturning an award of the Hearing Officer for other reasons, did not question this "implicit finding." The coal company argued before this court that the Hearing Officer's finding was incorrect because cancer is an "acute" disease. *Based upon the facts in that case*, we found that it was not unreasonable for the Hearing Officer to conclude that the miner's lung cancer was chronic. We read nothing in *Rose* to indicate that this court considered lung cancer to be chronic as a matter of law. Whether cancer is chronic or not is a medical question, and absent statutory or regulatory definitions of the term, we defer to the Benefits Review Board's expertise in this matter.

### III

Beyond the issue of chronicity, there is one aspect of the Board's interpretation of 20 C.F.R. § 410.462(b) which concerns us. The ALJ below found that once the presumption was invoked, the Director could rebut the presumption if it could show that Mr. Hunter's lung cancer "does not suggest a reasonable possibility of death due to pneumoconiosis." The ALJ found no such evidence to rebut the presumption. In reversing the ALJ, the Board noted that even if the claimant had invoked the presumption by showing the chronic nature of lung cancer, the lack of medical evidence indicating the presence of pneumoconiosis rebutted the presumption by showing that there was no reasonable possibility that death was due to pneumoconiosis. Our concern is that the ALJ and the Board have treated the "reasonable possibility" language of the second sentence of § 410.-462(b) as part of the Director's rebuttal case when the language of the regulation clearly provides that it is the claimant who bears this evidentiary burden.

As noted above, § 410.462 is the implementing regulation for § 411(c)(2) of the Act, and as such, it sets out the requirements for invoking the presumption relating to respirable diseases. Indeed, the regulation is entitled, "Presumption relating to respirable disease." Subsection (a), in effect, restates the language of the statute, providing that the presumption of death due to pneumoconiosis will be invoked if the "deceased miner was employed for 10 years or more in the Nation's coal mines and *died from a respirable disease*." (emphasis added). Thus, a claimant is required to prove these two elements in order to invoke the statutory presumption.

■ The first two sentences of subsection (b) proceed to define what is meant by death "from a respirable disease." The requirement in the first sentence, discussed

1. Footnote 3 of *Rose* reads, in pertinent part: Respondents make much of the use of the term "chronic" in [§ 410.401(b)(2) of] the regulations, asserting that cancer is an "acute" disease. In the absence of a specific definition of the term in these provisions, no such technical distinction should be made. In view of the fact that Rose's lung cancer was initially diagnosed, at an advanced stage, on November 14, 1974, and Rose's death occurred on February 6, 1975, it is not unreasonable to characterize his lung cancer as a progressive condition of some duration—in short, a "chronic" condition. 614 F.2d at 939 n. 3.

in part II above, requires the claimant to show that death was medically ascribed to a chronic dust disease or to another chronic disease of the lung. The second sentence limits the coverage of the first by providing that death from a respirable disease will be found only if the disease reported suggests a reasonable possibility that death was due to pneumoconiosis. Thus, a claimant who wishes to invoke the respirable disease presumption under 30 U.S.C. § 921(c)(2) and 20 C.F.R. § 410.462 must come forth with evidence that the disease which caused death was a chronic dust disease or a chronic disease of the lung *and* that the disease reported suggests a reasonable possibility of death due to pneumoconiosis. *Compare Smakula v. Weinberger,* 572 F.2d 127, 130 (3rd Cir.1978).

The Board's interpretation of § 410.462(b) requiring the Director to *rebut* the presumption by showing that the miner's fatal disease does not suggest a reasonable possibility of death due to pneumoconiosis is plainly erroneous and inconsistent with any fair reading of the regulation. The Director's burden on rebuttal is to show either (A) that the miner did not suffer from pneumoconiosis or (B) that the respirable disease did not arise out of or in connection with employment in a coal mine. *See* 30 U.S.C. § 921(c)(4).

We are mindful of our language in *Rose* noting the broad statutory definition of the term "pneumoconiosis" which "effectively allows for the compensation of miners suffering from a variety of respiratory problems that bear a relationship to their employment in the coal mines." 614 F.2d at 938. We do not limit that definition in any way in this opinion. We merely recognize, as does the Act and its regulations, that there are limits to the cases in which a claimant is entitled to benefits under the Act. In those cases covered by 20 C.F.R. § 410.462, the claimant must meet both requirements of the regulation in order to invoke the statutory presumption of death due to a respirable disease. In this case, we affirm the Board's finding that claimant did not submit sufficient evidence to prove

that the miner's lung cancer was a "chronic disease of the lung." Moreover, we note that no evidence was introduced to suggest a reasonable possibility of death due to pneumoconiosis. A review of the record reveals only the fact that Mr. Hunter died of lung cancer.

AFFIRMED.