**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MILBURN COLLIERY COMPANY,
Petitioner,

v.

GUY HICKS; DIRECTOR, OFFICE OF

WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
Respondents.

No. 96-2438

On Petition for Review of an Order
of the Benefits Review Board.
(96-494-BLA)

Argued: December 4, 1997

Decided: March 6, 1998

Before LUTTIG and WILLIAMS, Circuit Judges, and MERHIGE,
Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Reversed and remanded by published opinion. Judge Williams wrote
the opinion, in which Judge Luttig and Senior Judge Merhige joined.

_____

**COUNSEL**

**ARGUED:** William Steele Mattingly, JACKSON & KELLY, Mor-
gantown, West Virginia, for Petitioner. Jeremy Young Taylor,
NATIONAL LEGAL RESEARCH GROUP, INC., Charlottesville,

Virginia, for Respondents. **ON BRIEF:** Ann B. Rembrandt, JACK-SON & KELLY, Charleston, West Virginia, for Petitioner. Don M. Stacy, Beckley, West Virginia, for Respondent Hicks.

_____

**OPINION**

WILLIAMS, Circuit Judge:

Guy Hicks applied for benefits under the Black Lung Benefits Act (the Act), see 30 U.S.C.A. §§ 901-945 (West 1986 & Supp. 1997), on May 28, 1981. An Administrative Law Judge (ALJ) reviewed Hicks' claim on three separate occasions. The Benefits Review Board (Board) remanded the claim twice for reconsideration. The ALJ's third order awarding benefits was finally affirmed by the Board, fifteen years after Hicks applied for benefits. Milburn Colliery Company (Milburn) now petitions for review of the Board's order. Because the ALJ failed to consider all of the relevant evidence and made several other errors of law, we vacate and remand to the Board with instructions to assign the claim to a new ALJ for a prompt review of Hicks' application for benefits.

I.

Hicks labored underground as a coal miner for approximately forty years. His last employment in the coal mines was with Milburn from 1974 to 1982. Hicks applied for benefits under the Black Lung Benefits Act after suffering a heart attack in 1981. After Hicks underwent coronary artery bypass surgery in 1982, he never returned to work in the coal mines.

The record contains reports from six physicians dating from 1979 to 1988 that conflict as to whether Hicks has a totally disabling respiratory condition or is disabled solely by another ailment such as his heart disease or obesity. Additionally, the reports conflict as to whether, if disabled, his disability was attributable to coal workers' pneumoconiosis or another factor such as his smoking history. The same ALJ has evaluated the evidence three times. The ALJ's 1989 denial of benefits (First Order) was reversed and remanded by the

2

Board in 1993. The ALJ's award of benefits in 1993 (Second Order) was reversed and remanded by the Board in 1995. His 1995 award (Third Order), which was affirmed by the Board in 1996, incorporated all non-inconsistent rulings from his 1989 and 1993 decisions; thus, in essence, we review all three decisions.

Milburn now appeals, arguing that the arterial blood-gas study evidence does not support a finding of total disability and that the reliance upon medical opinion was neither supported by the evidence nor consistent with applicable law.

II.

We review claims for benefits under the Act to determine whether substantial evidence supports the ALJ's findings of fact. See Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir. 1995). Substantial evidence is "more than a mere scintilla." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. In determining whether substantial evidence supports the ALJ's factual determinations, we must first address whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir. 1997). We review the ALJ's and the Board's conclusions of law de novo to determine whether they are rational and consistent with applicable law. See Dehue, 65 F.3d at 1193. Because the ALJ failed to analyze all of the relevant evidence, failed to adequately explain his reasons for crediting certain evidence and discrediting other evidence, and made several errors of law, Hicks' claim must be remanded for further consideration.

III.

Hicks filed his claim for benefits after March 31, 1980. Thus, the standards for determining whether he is disabled due to pneumoconiosis are found in 20 C.F.R. Part 718. See 20 C.F.R. § 718.2 (1997). To establish eligibility for benefits under 20 C.F.R. Part 718, a claimant must prove that (1) he has pneumoconiosis; (2) the pneumoconiosis arose out of his coal mine employment; (3) he has a totally

3

disabling respiratory or pulmonary condition; and (4) pneumoconiosis is a contributing cause to his total respiratory disability. See Robinson v. Pickands Mather & Co., 914 F.2d 35, 36, 38 (4th Cir. 1990); 20 C.F.R. §§ 718.201-.204 (1997). Milburn does not dispute that Hicks has pneumoconiosis or that his pneumoconiosis arose out of his coal mine employment. The dispute centers around whether Hicks is totally disabled from a respiratory or pulmonary condition and whether pneumoconiosis contributed to his total disability.

A. Total Respiratory or Pulmonary Disability

The Act requires a miner to establish that he has a totally disabling respiratory condition.[1] See Jewell Smokeless Coal Corp. v. Street, 42 F.3d 241, 243 (4th Cir. 1994). In the absence of contrary probative evidence, a miner will establish total respiratory or pulmonary disability pursuant to the criteria set forth in 20 C.F.R.§ 718.204(c) by submitting either (1) qualifying pulmonary function tests; (2) qualifying arterial blood-gas tests; (3) evidence that the miner suffers from cor pulmonale with right-sided congestive heart failure; or (4) a reasoned physician's report which concludes that the miner's respiratory or pulmonary condition prevents the miner from engaging in his usual coal mine work or comparable gainful employment. [2] See 20 C.F.R. § 718.204(c) (1997). If contrary probative evidence exists, "the ALJ must assign the contrary evidence appropriate weight and determine whether it outweighs the evidence that supports a finding of total disability." Lane v. Union Carbide Corp., 105 F.3d 166, 171 (4th Cir. 1997).

_____

[1] As discussed in Part III.B., post at 15, a claimant also must prove that pneumoconiosis was, at least in part, a contributing cause to his total respiratory disability. Robinson v. Pickands Mather & Co., 914 F.2d 35, 38 (4th Cir. 1990).

[2] A miner may also establish total disability by invoking the irrebuttable presumption in 20 C.F.R. § 718.304 (providing irrebuttable presumption of total disability or death due to pneumoconiosis may be established by submitting chest X-ray yielding one or more large opacities or biopsy or autopsy yielding massive lesions in lung). Hicks did not submit evidence to invoke the presumption of disability in § 718.304, so we evaluate his claim instead under § 718.204. Compare 20 C.F.R. § 718.204 with 20 C.F.R. § 718.304 (1997).

Hicks does not dispute that the three pulmonary function tests in the record all produced non-qualifying values, and he produced no evidence establishing cor pulmonale with right-sided congestive heart failure. We must therefore determine whether Hicks established total disability under § 718.204(c)(2) on the basis of unchallenged arterial blood-gas studies, or under § 718.204(c)(4) by uncontradicted reasoned medical opinion evidence. If the evidence is contradicted, we must determine whether the ALJ conducted an appropriate analysis of the evidence to support his conclusion.

1. Blood-Gas Study Evidence

In his First Order, the ALJ concluded that Hicks had presented valid arterial blood-gas studies showing that Hicks was totally disabled.[3] See 20 C.F.R. § 718.204(c)(2) (1997). The record, however, contained reports of four blood-gas studies performed on Hicks, the results of which were in conflict.[4] Although the ALJ noted that the blood-gas

_____

[3] Although the ALJ concluded the qualifying blood-gas studies demonstrated Hicks was totally disabled pursuant to § 718.204(c)(2), he concluded the blood-gas study evidence was insufficient to establish that Hicks' disability was caused in part by pneumoconiosis. Thus, the ALJ determined the question of total disability should turn not on the blood-gas study evidence, but instead on the medical opinion evidence submitted pursuant to 20 C.F.R. § 718.204(c)(4). On the basis of the medical opinion evidence submitted pursuant to 20 C.F.R.§ 718.204(c)(4), the ALJ found Hicks had no respiratory impairment and was instead disabled solely by his cardiac condition. See post at 8-9.

[4] The study performed on October 8, 1979, by Dr. Rasmussen produced qualifying results on the at-rest portion and two during-exercise tests. Dr. Gaziano, on behalf of the Department of Labor, reviewed and validated the 1979 blood-gas study. Thereafter, Hicks suffered a heart attack and underwent coronary artery bypass surgery. On December 20, 1985, an at-rest test performed at St. Francis Hospital produced qualifying results; Hicks was not given a during-exercise blood-gas test due to his heart condition. The at-rest portion of a February 15, 1988, study administered by Dr. Rasmussen produced qualifying results, but the three during-exercise tests performed on the same day did not. An April 20, 1988, study administered by Dr. Zaldivar produced non-qualifying results. Dr. Zaldivar did not perform a during-exercise test due to Hicks' cardiac condition.

5

test results were contradictory, he found the studies to be, at the least, equally probative, and thus sufficient to provide Hicks with the benefit of the "true doubt" rule.[5] He also decided to accord the greatest weight to the October 8, 1979, study performed by Dr. Rasmussen because it was the only study validated by an independent physician, Dr. Gaziano. Milburn challenged the ALJ's reliance upon blood-gas study evidence in finding Hicks totally disabled. The Board upheld the ALJ's decision, reasoning that the ALJ was not required to accord greater weight to the most recent blood-gas study evidence and that the ALJ acted within his discretion in applying the"true doubt" rule and in according greater weight to the October 8, 1979, study because it was the only independently validated study. For other reasons the Board remanded the case for further evaluation.

It is undisputed that the blood-gas study evidence was contradictory. Out of a total of nine tests, the five initial tests produced qualifying results, and the four later tests did not. Although we have explicitly rejected a "later is better" approach to contradictory x-ray evidence in cases arising under the Act, see Adkins v. Director, OWCP, 958 F.2d 49, 51 (4th Cir. 1992), the parties conceded at oral argument that because pneumoconiosis is a progressive disease, later nonqualifying arterial blood-gas studies are inconsistent with coal workers' pneumoconiosis, see Gray v. Director, OWCP, 943 F.2d 513, 520-21 (4th Cir. 1991) (upholding ALJ's decision to credit later

_____

[5] The "true doubt" rule provided that "[w]hen there is conflicting, but equally probative, evidence for and against the existence of a particular fact in the benefits inquiry, or, ultimately, when the evidence for and against entitlement to black lung benefits is equiponderate . . . the benefit of the doubt [must] be given to the claimant." Grizzle v. Pickands Mather & Co., 994 F.2d 1093, 1096 (4th Cir. 1993). The true doubt rule was subsequently invalidated by the Supreme Court. See Director, OWCP v. Greenwich Collieries, 512 U.S. 267, 281 (1994) (holding the "true doubt" rule conflicted with § 7(c) of the Administrative Procedure Act).

The Board, in its 1995 order, noted the Court's intervening decision had rendered the ALJ's application of the "true doubt" rule to be error, but the Board nevertheless held that any error was harmless because the ALJ offered valid alternative reasons for finding total respiratory disability: according more weight to the "independently validated" blood-gas study and to a medical opinion of Dr. Rasmussen.

6

nonqualifying studies because they were "more indicative of claimant's present condition").

Even if we look to factors other than the chronological relationship of the tests, we question whether the ALJ's conclusions with respect to the blood-gas studies were reasonable. The ALJ and the Board credited Dr. Rasmussen's 1979 blood-gas study solely because it was validated by Dr. Gaziano for the United States Department of Labor. Dr. Gaziano, however, merely checked a box verifying that the test was technically acceptable. He provided no reasons for his opinion. Therefore, his validation lent little additional persuasive authority to Dr. Rasmussen's 1979 study. Cf. Lane v. Union Carbide Corp., 105 F.3d 166, 172 (4th Cir. 1997) (noting lack of detail in validation of a qualifying blood-gas study and affirming ALJ's conclusion that arterial blood-gas studies did not establish total disability).

The ALJ did not discuss the reports submitted by three qualified physicians that criticized Dr. Rasmussen's interpretation of the blood-gas studies. Dr. Fino, who is board-certified in both Internal Medicine and Pulmonary Disease, analyzed Dr. Rasmussen's 1979 arterial blood-gas study in a report dated February 5, 1988. Dr. Fino did not challenge the validity or accuracy of the 1979 study, but concluded that "the high ventilatory rate recorded during[the] exercise study was due to hyperventilation" and that the exercise study "demonstrated the fact that [Hicks] can exercise to an oxygen consumption necessary for his last job in the mines." (J.A. at 51.) The ALJ failed to discuss Dr. Fino's report at all.

The ALJ also neglected to consider Dr. Sobieski's report of February 9, 1988, in which he also questioned the validity of Dr. Rasmussen's interpretation of the 1979 arterial blood-gas study. Based upon his 1979 study, Dr. Rasmussen concluded that Hicks' lung capacity was approximately 85% impaired, and thus Hicks was incapable of performing steady work beyond sedentary work levels. Dr. Sobieski, a board-certified physician in Internal Medicine, criticized these conclusions, however, stating, "Dr. Rasmussen's conclusions are obviously wrong since at the time of [Hicks'] application [for benefits] two years [after the 1979 study] he was doing far more than just sedentary work." (J.A. at 55.)

7

The ALJ also failed to consider Dr. Zaldivar's testimony that obesity could affect the blood-gas studies, causing the studies to be more likely to qualify; nor did the ALJ address the potential effect of Hicks' heart disease and intervening coronary artery surgery on the tests. Cf. Ramey v. Kentland Elkhorn Coal Corp. , 755 F.2d 485, 491 (4th Cir. 1985) (noting physician found claimant's blood gas results "consistent with heart disease" and affirming ALJ's conclusion that claimant had a totally disabling heart disease, but that he did not have a totally disabling pulmonary impairment). Dr. Zaldivar also testified that on the basis of Dr. Rasmussen's second blood-gas study, conducted in 1988, Hicks should have been able to perform his previous job as a beltman. In its review of the ALJ's Second Order, the Board found that the ALJ erred in "substituting his opinion for that of a physician when he discredited Dr. Zaldivar's [opinion] because of [Dr. Zaldivar's] interpretation of a blood gas study" and remanded for a correction of that error, among others. (J.A. at 31.) On remand, however, the ALJ never resolved, or even discussed, the contradictions in the evidence created by Dr. Zaldivar's interpretations of Dr. Rasmussen's blood-gas studies.

Because the ALJ did not have the benefit of the parties' concession and failed to consider all the relevant evidence presented, we remand for further consideration the issue of whether the arterial blood-gas studies support a finding of total respiratory disability.

2. Reasoned Medical Opinion

We now turn to the question of whether the medical opinion evidence supported the ALJ's finding that Hicks suffered from a totally disabling respiratory condition pursuant to 20 C.F.R. § 718.204(c)(4). Total respiratory disability may be established by"a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, conclud[ing] that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in [his usual coal mine work]." 20 C.F.R. § 718.204(c)(4) (1997).

8

a. Administrative Record Below

In his First Order, the ALJ concluded, upon reviewing the medical opinion evidence under 20 C.F.R. § 718.204(c)(4), that Hicks did not have a significant pulmonary impairment and that his disability resulted instead from his coronary artery disease which was unrelated to his coal mine employment. In so doing, the ALJ relied exclusively upon two of the examining physicians' reports, Dr. Rasmussen's and Dr. Zaldivar's.[6] Of the two reports, the ALJ credited Dr. Zaldivar's opinion over Dr. Rasmussen's. Dr. Zaldivar concluded that although Hicks suffered from pneumoconiosis, he had no respiratory impairment and was instead disabled solely due to his cardiac condition.

The ALJ found Dr. Zaldivar's opinion to be "the most thorough and detailed medical analysis" in the record and "in better accord with the overall weight of the evidence." (J.A. at 8.) He also found Dr. Rasmussen's opinion less persuasive because "Dr. Rasmussen failed to provide a meaningful evaluation of [the] heart related ailments" that had caused Hicks to stop working. (J.A. at 8.) Furthermore, the ALJ stated that Dr. Rasmussen failed to explain how his diagnosis of minimal pulmonary impairment, based upon two pulmonary function studies, was consistent with his conclusion of total respiratory disability. A divided Board held that the ALJ erred by discrediting Dr. Rasmussen's opinion solely based upon the apparent inconsistencies between his pulmonary function studies and his diagnosis.[7] The Board further noted that, contrary to the ALJ's assertion, Dr. Rasmussen had mentioned Hicks' coronary artery disease. Accordingly, the Board remanded for further consideration of whether reasoned medical opinion established Hicks' total disability and, if so, its cause.

In his Second Order, the ALJ reversed his position and awarded benefits. He still relied solely upon the opinions of Dr. Rasmussen and Dr. Zaldivar, never discussing the other doctors' medical opinions. In his Second Order, however, the ALJ found that both Dr. Rasmussen and Dr. Zaldivar agreed that Hicks was totally disabled "in

_____

[6] **See post** at 10-11 (noting ALJ erred in giving absolute deference to examining physicians' opinions).
[7] One member of the Board would have affirmed the ALJ's finding pursuant to § 718.204(c)(4).

terms of the criteria set out in 20 CFR 718.204(c)" because he could no longer perform his customary work, but that they disagreed as to the cause of his disability. Dr. Zaldivar found that Hicks was disabled due to his heart condition, while Dr. Rasmussen attributed Hicks' disability to a respiratory condition arising from both coal mine work and cigarette smoke exposure. The ALJ inferred that Dr. Rasmussen's opinion was more persuasive than Dr. Zaldivar's because it was more consistent with non-medical evidence of Hicks' coal mine employment and Hicks' own lay testimony as to his symptoms. The ALJ also noted that even if Hicks' evidence was insufficient to outweigh Milburn's evidence, the evidence was "equally balanced and equally persuasive," and would thus lead to the application of the "true doubt" rule.**8** The ALJ discredited Dr. Zaldivar's opinion on the basis that Dr. Zaldivar used inappropriate criteria in evaluating the blood-gas study evidence, misconstrued other examining physicians' findings, and expressed "partisan advocacy" in justifying his medical conclusions.

On review, the Board held that the ALJ erred in finding Dr. Zaldivar's opinion supported a finding of total disability under § 718.204(c)(4) because Dr. Zaldivar attributed Hicks' disability to his heart condition rather than any respiratory or pulmonary impairment. The Board concluded, however, that the error was harmless since the ALJ provided a valid alternative basis for finding total respiratory disability pursuant to § 718.204(c)(4), namely by crediting Dr. Rasmussen's opinion over Dr. Zaldivar's. Nevertheless, the ALJ's Second Order was remanded for reconsideration of the competing medical opinion evidence because the Board found that the three reasons the ALJ gave for discrediting Dr. Zaldivar's opinion were erroneous. Upon remand, in his Third Order, the ALJ incorporated all non-inconsistent findings of fact from his previous two orders and again awarded benefits relying solely upon Dr. Rasmussen's opinion.

b. Errors in the ALJ's Finding Total
Respiratory Disability

In concluding Hicks established that he was totally disabled due to a respiratory condition, the ALJ erred by failing to consider all of the

_____

**8** See the discussion of the"true doubt" rule and its subsequent invalidation by the Supreme Court, ante n.5.

10

relevant evidence, improperly weighing certain evidence, failing to adequately explain why he credited certain evidence and discredited other evidence, and never adequately addressing the evidence of Hicks' other health problems.

First, the ALJ erred in failing to examine all of the relevant evidence. See Sterling Smokeless Coal Co. v. Akers , 131 F.3d 438, 439 (4th Cir. 1997). The ALJ gave absolute deference to the examining physicians' reports, with the exception of Drs. Subbaraya and Bembalker, who gave no rationale for their opinions. **9** The opinions of examining physicians Dr. Rasmussen and Dr. Zaldivar were the sole bases for the ALJ's determination pursuant to 20 C.F.R. § 718.204(c)(4). The ALJ completely disregarded the opinions of Dr. Fino and Dr. Sobieski, despite the fact that he found their opinions to be "of high quality," simply because they did not examine Hicks.**10** We recently noted that an ALJ should not "mechanistically credit[ ], to the exclusion of all other testimony," the testimony of an examining or treating physician solely because the doctor personally examined the claimant. Akers, 131 F.3d at 441. The ALJ has a "statutory obligation to consider all of the relevant evidence bearing upon the existence of pneumoconiosis and its contribution to the miner's [disability]." Id. at 442. Therefore, the ALJ erred in considering Dr. Rasmussen's and Dr. Zaldivar's opinions to the exclusion of all the other competent medical opinion evidence.

Second, the ALJ, in his Second Order, improperly weighed the evidence of Hicks' length of employment in the coal mines and Hicks' own statements about his pulmonary symptoms, stating:

_____

**9** An ALJ has discretion to disregard an opinion unsupported by a sufficient rationale. See Underwood v. Elkay Mining, Inc., 105 F.3d 946, 951 (4th Cir. 1997) ("In weighing opinions, the ALJ is called upon to consider their quality," taking into account, among other things, "the opinions' reasoning" and "detail of analysis."); see also Risher v. OWCP, 940 F.2d 327, 331 (8th Cir. 1991) ("An ALJ may disregard a medical opinion that does not adequately explain the basis for its conclusion.").
**10** Dr. Fino attributed Hicks' disability to his obesity. Dr. Sobieski attributed Hicks' mild pulmonary impairment solely to his long history of smoking, and found Hicks was disabled because of his coronary artery disease.

11

> The evidence as to the length of the Claimant's employment at strenuous physical labor in underground coal mines strongly supports the conclusion expressed by Dr. Rasmussen . . . that a respiratory or pulmonary condition prevents him from engaging in his former coal mine employment. This non-medical evidence and the testimony of the Claimant as to the pulmonary symptoms from which he is suffering also support the inference that Dr. Rasmussen's finding as to this issue is more persuasive than that of Dr. Zaldivar.

(J.A. at 22.) While relevant to the issue of whether there is a totally disabling respiratory impairment, a miner's own statements about his history of coal mine employment or symptoms of pneumoconiosis are not conclusive in resolving conflicting medical opinion evidence. To hold otherwise would be tantamount to allowing the ALJ to substitute his untrained opinion for that of qualified experts, which is not allowed. See Peabody Coal v. Lowis, 708 F.2d 266, 275 (7th Cir. 1983) (holding ALJ erred in ignoring reasoned medical opinion of a board certified specialist in internal medicine and pulmonary diseases that claimant's respiratory impairment was due to cigarette smoking and not coal mine employment). Additionally, the length of a miner's coal mine employment does not compel the conclusion that the miner's disability was solely respiratory. See, e.g., Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 492 (6th Cir. 1985) (holding miner employed in coal mines twenty-nine years was totally disabled due to heart disease not pneumoconiosis).

Third, the ALJ failed to adequately explain why he credited certain evidence and discredited other evidence. For example, the ALJ cited no valid reasons for crediting Dr. Rasmussen's opinion over Dr. Zaldivar's. In his final order, the ALJ credited Dr. Rasmussen's opinion, stating:

> In according greater weight to the opinion of Dr. Rasmussen, I find that, despite some discrepancy in Claimant's reported cigarette smoking history, his opinion is most consistent with the Claimant's extensive history of coal mine employment, Claimant's subjective complaints, some abnormal findings on physical examination, x-ray and medical

12

opinion evidence of pneumoconiosis, and the preponderance of the valid arterial blood gas results.

(J.A. at 35.) None of these reasons is a sufficient basis for concluding Hicks was disabled due to a respiratory impairment. We examine each in turn. The length of Hicks' coal mine employment does not conclusively confirm that the claimant was disabled due to a respiratory or pulmonary condition. Similarly, Hicks is not an expert as to the cause of his shortness of breath and wheezing and cannot make a medical judgment as to whether such subjective symptoms are fairly attributable to a respiratory condition or to cardiac disease or to obesity. Cf. Peabody Coal Co. v. Helms, 859 F.2d 486, 490 (7th Cir. 1988) (noting with approval physician's statement that "shortness of breath can be a symptom of heart disease and . . .[claimant's] heart disease was not related to his coal mine employment"). The ALJ's statement that "some abnormal findings on physical examination" also supported Dr. Rasmussen's opinion is too vague to support a finding of total disability due to a respiratory condition. Reliance upon the x-ray evidence is also misplaced; all of the physicians who submitted reports agreed that x-rays revealed Hicks had pneumoconiosis, but the mere presence of pneumoconiosis is not synonymous with a totally disabling respiratory condition. As discussed in part III.A.1., the arterial blood-gas results were contradictory.

In addition to failing to give sufficient reasons for crediting Dr. Rasmussen's opinion, the ALJ did not provide adequate reasons for discrediting Dr. Zaldivar's opinion. In his Second Order, the ALJ discredited Dr. Zaldivar's opinion on the basis that Dr. Zaldivar used inappropriate criteria in evaluating the blood-gas study evidence, misconstrued other examining physicians' findings, and expressed "partisan advocacy" in justifying his medical conclusions. The Board subsequently reversed each of these findings. The ALJ never articulated alternative reasons for discrediting Dr. Zaldivar's opinion.

Finally, the ALJ erred in merely giving lip service to the evidence of Hicks' other health problems. Specifically, the ALJ did not address Dr. Rasmussen's failure to provide a meaningful evaluation of Hicks' heart-related ailments, a reason for which the ALJ had previously discredited Dr. Rasmussen's opinion in his First Order. The record in this case contained ample evidence that Hicks had numerous other

13

health problems in addition to pneumoconiosis, including cardiac disease, coronary artery disease, obesity, and hypertension. The evidence showed that Hicks stopped working because of a heart attack and subsequent coronary artery bypass surgery in 1982. Dr. Zaldivar concluded Hicks had no respiratory impairment and was disabled solely due to his cardiac condition. Dr. Fino attributed Hicks' disability to his obesity, and Dr. Sobieski determined Hicks was disabled because of his coronary artery disease.

The ALJ failed to explain why he rejected all of this evidence of Hicks' other health problems. In his Third Order, rather than providing any reasons for discrediting these physicians' conclusions, the ALJ merely stated "even assuming that the Claimant's cardiac condition is the primary cause of Claimant's total disability as suggested by Dr. Zaldivar, it is not the exclusive cause . . .. The Claimant's coal worker's pneumoconiosis clearly is, at least, a significant contributing cause of such total disability." (J.A. at 35-36.) The ALJ's statement directly contravenes our previous holding that, to establish eligibility for benefits, a miner must prove he has a totally disabling respiratory condition. See Jewell Smokeless Coal Corp. v. Street, 42 F.3d 241, 243 (1994). In Jewell Smokeless, we rejected the argument that "[a] miner need only establish that he has a total disability, which may be due to pneumoconiosis in combination with nonrespiratory and non-pulmonary impairments." Id. Thus, the ALJ erred in concluding that even if Hicks' cardiac condition was the primary cause of Hicks' total disability, Hicks would still be eligible for benefits because he suffered from pneumoconiosis.

Even if the ALJ determines, after considering all of the relevant evidence, that Hicks suffered from a totally disabling respiratory condition, Hicks will not be eligible for benefits if he would have been totally disabled to the same degree because of his other health problems. A claimant cannot establish eligibility for benefits if he would have been totally disabled "to the same degree[and] by the same time in his life had he never been a miner." Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1196 (4th Cir. 1995); see also Shelton v. Director, OWCP, 899 F.2d 690, 693 (7th Cir. 1990) (holding miner not entitled to benefits if he would have become disabled by reason of heavy smoking or other activity or condition).

14

Therefore, on remand, the ALJ must determine whether Hicks suffers from a totally disabling condition that is entirely respiratory or pulmonary in nature and whether Hicks would have been totally disabled to the same degree because of his other health problems. In making this determination, the ALJ must consider all of the relevant evidence, addressing Dr. Zaldivar's and the other physicians' conclusions with respect to Hicks' nonpulmonary conditions.

B. Causation

To establish eligibility for benefits, a miner must prove not only that he suffered from a totally disabling respiratory condition, but that pneumoconiosis was a contributing cause to his totally disabling respiratory condition. See 20 C.F.R. § 718.204; Robinson v. Pickands Mather & Co., 914 F.2d 35, 38 (4th Cir. 1990). Therefore, even if the ALJ upon remand were to determine Hicks has established total respiratory disability by blood-gas study evidence or reasoned medical opinion evidence, that still does not answer the very important question necessary to establish eligibility for benefits: whether the total respiratory disability was caused in whole or in part by coal workers' pneumoconiosis.

In addition to failing to consider all of the relevant evidence relating to Hicks' potential disability, the ALJ neglected to consider the relevant evidence relating to the possible causes of such a disability. For example, the ALJ dismissed Hicks' long history of cigarette smoking. Although Dr. Rasmussen first reported Hicks smoked one pack of cigarettes daily for thirty-five years, and he later reported Hicks smoked 1/3 pack of cigarettes a day for forty-five years, Hicks' long history of smoking was undisputed. Dr. Sobieski originally concluded Hicks' mild pulmonary impairment was solely a result of his history of cigarette smoking.[11] Dr. Rasmussen opined that Hicks' pulmonary impairment was partially attributable to his long history of

_____

[11] At the time of his original consultative report of February 9, 1988, Dr. Sobieski did not have records of Hicks' myocardial infarction and coronary bypass surgery. Dr. Sobieski submitted a supplemental report on May 5, 1988, after reviewing those records concluding Hicks' disability resulted from his coronary artery disease, not a respiratory impairment.

15

cigarette smoking. We have noted that "a medical opinion that acknowledges the miner's respiratory or pulmonary impairment, but nevertheless concludes that an ailment other than pneumoconiosis caused the miner's total disability, is relevant because it directly rebuts the miner's evidence that pneumoconiosis contributed to his disability." Dehue, 65 F.3d at 1193 (citing Hobbs v. Clinchfield Coal Co., 45 F.3d 819, 821 (4th Cir. 1995) (Hobbs II)). Every doctor concluded Hicks had pneumoconiosis, but their conclusions differed as to whether Hicks had a totally disabling respiratory condition and, if so, what factors caused it.

The ALJ failed to address other possible causes of Hicks' potential disability, summarily concluding in his Third Order that Dr. Rasmussen's opinion that Hicks' totally disabling respiratory condition was due to pneumoconiosis was "most consistent with the Claimant's extensive history of coal mine employment [and] Claimant's subjective complaints." (J.A. at 35.) Just as the length of a miner's employment in the coal mines does not compel the conclusion that a miner's disability was entirely respiratory in nature, it does not conclusively establish that pneumoconiosis contributed to a totally disabling respiratory condition. See, e.g., Stiltner v. Island Creek Coal Co., 86 F.3d 337, 339-340 (4th Cir. 1996) (holding miner employed in coal mines approximately forty years had obstructive lung disease attributable solely to cigarette smoking not pneumoconiosis); Grizzle v. Pickands Mather & Co., 994 F.2d 1093, 1094, 1099 (4th Cir. 1993) (holding miner employed thirty-five years suffering from pneumoconiosis died from emphysema and lung cancer to which pneumoconiosis was not contributing cause).

The ALJ upon remand must evaluate all of the relevant evidence to determine whether Hicks has established total respiratory disability, and, if so, whether the total respiratory disability was caused, at least in part, by coal workers' pneumoconiosis.

C. Other Errors of Law

The ALJ made other errors of law in his three orders below. He ignored the respective qualifications of the physicians and failed to specify the bases for his determination to award benefits in his Third Order.

16

First, the ALJ improperly discounted the respective qualifications of the physicians. Dr. Rasmussen is board-certified in only Internal Medicine, while Dr. Zaldivar is board-certified in both Internal Medicine and Pulmonary Disease. Although the ALJ noted the relative qualifications of the two physicians, he attributed no importance to the comparative credentials of the physicians, noting their respective qualifications were "not dispositive of the issue." (J.A. at 35.) We have previously stated that experts' respective qualifications are important indicators of the reliability of their opinions. See Akers at 440, 441, nn.1-2; Adkins v. Director, OWCP, 958 F.2d 49, 52 (4th Cir. 1992). Furthermore, the ALJ completely ignored the medical opinions of the other physicians, despite their credentials. For example, the ALJ did not consider the opinion of Dr. Fino, a board-certified physician in both Internal Medicine and Pulmonary Disease. Dr. Fino concluded that Hicks did not "[have a] respiratory impairment even though he ha[d] simple coal workers' pneumoconiosis." (J.A. at 149.) Instead, Dr. Fino attributed Hicks' disability solely to his obesity. On remand, the ALJ should consider all of the relevant evidence, taking into account the respective qualifications of the physicians.

Second, instead of specifying the bases for his determination to award benefits in his Third Order, the ALJ merely incorporated the findings of fact from his two previous orders.[12] Many of the ALJ's previous findings --- such as his reasons for discrediting Dr. Zaldivar's opinion --- had been expressly vacated by the Board. After the Board's superseding orders modified and vacated the ALJ's earlier orders, few of the ALJ's findings of fact remained intact. Some of the ALJ's conclusions of law were also reversed by later court rulings;

_____

[12] The ALJ stated:

> Except as otherwise modified or superseded herein, or expressly vacated by the decisions of the Benefits Review Board, all of the evidence which was previously discussed in the original Decision and Order Denying Benefits and the Decision and Order on Remand Awarding Benefits are incorporated herein, thereby obviating the necessity for a complete repetition of such evidence.

(J.A. at 34-35.)

17

for example, the Supreme Court held the "true doubt" rule invalid.**13** It is therefore difficult for a reviewing body to ascertain exactly what evidence and conclusions the ALJ relied upon to determine total disability and causation. See Jewell Smokeless, 42 F.3d at 244 (noting difficulty in ascertaining whether claimant's disability was due to a pulmonary impairment totally separate from other non-respiratory conditions). Only the ALJ may make findings of fact as to whether the evidence indicates a miner suffers from a totally disabling respiratory condition to which pneumoconiosis is a contributing cause. See id. at 245. Since we are legally unable to reweigh the evidence ourselves, see Grizzle v. Pickands Mather & Co., 994 F.2d 1093, 1098 (4th Cir. 1993), the claim must be remanded for explicit findings of fact and conclusions of law as to whether Hicks suffers from a totally disabling respiratory condition, and if so, whether pneumoconiosis was a contributing cause.

Moreover, the ALJ's final order, incorporating all previous findings, is violative of the Administrative Procedure Act (APA). The APA requires that "[a]ll decisions . . . shall include a statement of . . . findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." See 5 U.S.C.A. § 557(c)(3)(A) (West 1996); See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 384 (4th Cir. 1994). The ALJ instead relied upon summary conclusions that were not fully explained or supported. In his Third Order, the ALJ stated, "[b]ased upon the totality of the evidence, in particular the opinion of Dr. Rasmussen, which I credit, I find that the Claimant's coal worker's[sic] pneumoconiosis clearly is, at least, a significant contributing cause of such total disability." (J.A. at 36.) In deciding to award benefits, he relied solely upon his conclusion that Dr. Rasmussen's opinion was entitled to greater weight than all of the other relevant evidence, a conclusion that was not supported by valid reasoning.

IV.

Finding the ALJ made several errors of law including failing to consider all of the relevant evidence and to adequately explain his rationale for crediting certain evidence, we conclude that review of

_____

**13** See discussion ante n.5.

this claim requires a fresh look at the evidence, unprejudiced by the various outcomes of the ALJ and the Board's orders below. Accordingly, we reverse and direct the Board promptly to remand to a new ALJ with instructions to expeditiously review the record for a determination of whether Hicks has established entitlement to Black Lung benefits pursuant to 20 C.F.R. § 718.204. To determine whether the claimant meets his burden under 20 C.F.R. § 718.204, the new ALJ has discretion to reopen the record.

<u>REVERSED AND REMANDED FOR FURTHER
PROCEEDINGS CONSISTENT WITH THIS OPINION</u>

19