UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CONSOLIDATION COAL COMPANY,
Petitioner,

v.

THEODORE M. LATUSEK, JR.;

No. 98-2336

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(97-1454-BLA)

Argued: May 5, 1999

Decided: August 6, 1999

Before MURNAGHAN, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Vacated and remanded by unpublished opinion. Judge Williams wrote
the majority opinion, in which Judge Luttig joined. Judge Murnaghan
wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** William Steele Mattingly, JACKSON & KELLY, Mor-
gantown, West Virginia, for Petitioner. Sue Anne Howard, Wheeling,
West Virginia, for Respondents. **ON BRIEF:** Kathy L. Snyder,
JACKSON & KELLY, Morgantown, West Virginia, for Petitioner.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WILLIAMS, Circuit Judge:

Theodore Latusek, Jr., filed a claim against Consolidation Coal Company (CCC) seeking compensation under the Black Lung Benefits Act, 30 U.S.C.A. §§ 901-945 (West 1986 & Supp. 1999). After a formal hearing on February 25, 1997, the Administrative Law Judge (ALJ) awarded benefits to Latusek. On appeal, the Benefits Review Board (the Board) affirmed the ALJ's decision. CCC now appeals to us. Because we conclude that the ALJ failed adequately to explain the reasons for crediting certain medical opinions to the exclusion of others, we must vacate and remand the decision for further consideration.

I.

Theodore Latusek, Jr., worked in the coal mines of West Virginia for approximately twenty-four years, all of it with CCC. During his long tenure, Latusek worked as a general laborer, shuttle car operator, loading machine operator, miner operator, mechanic, section boss, and long wall operations coordinator. He was exposed to dust throughout his career and particularly while he served as a long wall operations coordinator.

Latusek underwent a routine physical examination at age forty. The exam disclosed "some pulmonary problems," and Latusek began a long series of referrals and examinations by various physicians. (J.A. at 499.) Latusek's first treating physician, Dr. Roger Abrahams, diagnosed possible early interstitial fibrosis. Latusek then consulted Dr. Joseph Renn, III, a pulmonary specialist. Upon initial examination, Dr. Renn diagnosed Latusek with "interstitial pulmonary fibrosis (IPF), also known as usual interstitial pneumonitis (UIP)."[1] (J.A. at

_____

[1] As several doctors explained in the record before us, IPF and UIP were different terms for the same pulmonary disease. For ease of reference we will simply refer to the condition as IPF.

2

501.) Latusek then underwent a lung biopsy and an analysis by Dr. James A. Waldron of the National Jewish Center for Immunology and Respiratory Medicine (the National Jewish Center), who found evidence of IPF and coal workers' pneumoconiosis.

Latusek next was evaluated by Dr. Cecile Rose, a staff physician at the National Jewish Center who is board certified in internal medicine, pulmonary diseases, and occupational medicine. Dr. Rose again confirmed the diagnosis of coal workers' pneumoconiosis and IPF. Another physician at National Jewish Center, Dr. Constance Jennings, who serves as the Clinical Director of the Interstitial Lung Disease Laboratory at the National Jewish Center, also examined Latusek and eventually concluded that he suffered from "diffuse interstitial fibrosis" related to coal workers' pneumoconiosis. (J.A. at 502.) Because Dr. Jennings believed that the IPF was "related to" Latusek's work in the coal mines, she suggested that Latusek cease working there. (J.A. at 45.) Following that advice, Latusek retired on April 30, 1994.

Following his retirement, two other physicians examined Latusek -- Dr. P.V. Devabhaktuni, a specialist in pulmonary and critical care medicine, and Dr. Gregory Fino, a specialist in internal medicine and pulmonary diseases. Both physicians diagnosed Latusek with IPF, and Dr. Fino also noticed the presence of coal workers' pneumoconiosis. Several other physicians reviewed the medical evidence and offered opinions on Latusek's condition, including: Dr. Jerome Kleinerman, a pathologist with expertise in coal workers' pneumoconiosis, Dr. W.K.C. Morgan, an expert in occupational lung diseases, Dr. Koichi Honma, a pathology specialist with the Dokkyo University School of Medicine in Japan, Dr. Richard L. Naeye, Chairman of the Pathology Department of Pennsylvania State University College of Medicine, and Dr. Samuel V. Spagnolo, a pulmonary specialist and professor at the George Washington School of Medicine and Health Care Sciences. Each of these physicians either diagnosed Latusek with mild coal workers' pneumoconiosis and/or IPF.

In all, at least twelve physicians either treated, examined, or reviewed Latusek's condition. Based on their opinions and as CCC admits, Latusek has at least a mild case of coal miners' pneumoconiosis and a totally disabling pulmonary condition. The physicians who

3

concluded that Latusek is totally disabled, however, attributed his disability to IPF, not coal workers' pneumoconiosis.

After reviewing the exhaustive medical evidence, the ALJ concluded that Latusek's "IPF arose out of his coal mine employment and that he is totally disabled due to pneumoconiosis," and accordingly, awarded Latusek benefits. (J.A. at 507.) The Board affirmed the ALJ's decision, concluding that it was "supported by substantial evidence, [was] rational, and [was] in accordance with applicable law." (J.A. at 509.) CCC now appeals the decision to us.

II.

"The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C.A. § 921(b)(3) (West 1986) (as incorporated by 30 U.S.C.A. § 932(a) (West 1986)); see also Wilson v. Benefits Review Bd., 748 F.2d 198, 199-200 (4th Cir. 1984). "We review the Board's decision to determine whether it committed an error of law and whether it adhered to its scope of review." Marx v. Director, OWCP, 870 F.2d 114, 118 (3d Cir. 1989). This duty requires an independent review of the record to determine whether the decision was supported by substantial evidence. See id. Substantial evidence is more than a scintilla and is such evidence that a reasonable mind would accept to support a conclusion. See NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939); Richardson v. Perales, 402 U.S. 389, 401 (1971)."In determining whether substantial evidence supports the ALJ's factual determinations, we must first address whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998).

In order to establish a right to benefits under the Black Lung Benefits Act, 30 U.S.C.A. §§ 901-945 (West 1986 & Supp. 1999), "a claimant must prove that (1) he has pneumoconiosis; (2) the pneumoconiosis arose out of his coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) pneumoconiosis is a contributing cause to his total respiratory disability." Milburn Colliery Co., 138 F.3d at 529 (emphasis added) (citing 20 C.F.R.

4

§§ 718.201-.204 (1997)).**2** Because CCC admits that Latusek has a totally disabling pulmonary condition, the only remaining question is whether "pneumoconiosis is a contributing cause to his total respiratory disability."

CCC contends that substantial evidence does not support the link between the total respiratory disability and Latusek's employment as a coal miner. Specifically, CCC argues that IPF is not caused by the inhalation of dust and cannot therefore be considered pneumoconiosis. See 20 C.F.R. § 718.201 (1998) ("[P]neumoconiosis means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment."). At a minimum, however, CCC contends that the ALJ failed to properly analyze and explain why certain medical opinions were credited over others.

"Before we can determine whether substantial evidence supports an administrative determination, we must first ascertain whether the agency has discharged its duty to consider all relevant evidence." Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir. 1997) (internal quotation marks omitted). An integral part of reviewing the record is performing an analysis of conflicting medical opinions to determine which should be credited. See Milburn Colliery Co., 138 F.3d at 529; Lane v. Union Carbide Corp., 105 F.3d 166, 171 (4th Cir. 1997). Because medical opinions often involve highly technical matters unfamiliar to an ALJ or a court, a case frequently turns upon which opinions are given greater weight. We have, therefore, provided guidelines for weighing medical testimony.

Two of these guidelines are particularly relevant to this case. First, we require that the ALJ carefully scrutinize the comparative quality of medical opinions. See Milburn Colliery Co. , 138 F.3d at 533. Second, we require that the ALJ give sufficient reason for crediting an opinion, but also for discrediting an opinion. See id.

_____

**2** We note that 20 C.F.R. § 718 (1998) applies to all claims filed after April 1, 1980, and thus applies to this case. See Lane v. Union Carbide Corp., 105 F.3d 166, 170 (4th Cir. 1997).

5

As a threshold matter, we note that at least two treating doctors, Dr. Jennings and Dr. Rose, and one reviewing doctor, Dr. Honma, concluded that Latusek's IPF was due to his employment in the coal mines and related dust inhalation.**3** Standing alone, this diagnosis would be enough to support a conclusion that the etiology of Latusek's IPF could be traced to his exposure to dust in the coal mines and thus satisfy Latusek's burden to prove his claim. Yet the record contains a great deal more information. Drs. Jennings, Rose and Honma were only three of twelve physicians that either treated, examined, or reviewed Latusek's condition. Three of the remaining physicians -- Drs. Abrahams, Devabhaktuni, and Waldron -- were unable to draw any firm conclusion regarding the origins of IPF. Six physicians -- Drs. Fino, Kleinerman, Morgan, Naeye, Renn, and Spagnolo -- concluded that IPF was not related to Latusek's exposure to dust as a coal miner. These contrary opinions, standing alone, also would constitute substantial evidence. See Stiltner v. Island Creek Coal Co., 86 F.3d 337, 343 (4th Cir. 1996) ("Indeed, the five opinions challenged here constitute substantial evidence in support of the denial of benefits because they rule out coal mine employment as a contributing factor to Stiltner's total disability .. . ."). Although we do not advocate counting the votes of various medical experts to reach a conclusion, the vast majority of experts who weighed in on the etiology of Latusek's disability opposed the ALJ's finding. See Sterling Smokeless Coal, 131 F.3d at 440-41 (noting that it is impermissible to draw a conclusion solely because the majority of physicians support it). We believe that such a disparity of opinion merits attention.

In his decision, the ALJ gave two reasons for crediting Dr. Jennings's and Dr. Rose's opinions. First, he noted that Dr. Jennings is a specialist in IPF and has published articles on the subject. Second, he cited three published articles supporting their hypothesis regarding the link between IPF and coal dust exposure. Dr. Jennings's expertise is an important factor and should be given due weight.**4** The support provided by the articles, however, is rather weak.

_____

**3** Dr. Rose's opinion was, however, equivocal. Although she indicated that "to a reasonable probability" Latusek's IPF sprang from his work in the coal mines, she also observed that there was "enormous uncertainty" regarding the link between IPF and dust exposure. (J.A. at 244, 246.)
**4** We note the dissent's enthusiasm for Dr. Jennings's credentials, which we believe are substantial, but not "indisputably superior to those

First, despite the ALJ's determination that the articles were written by "reputable physicians," there is no evidence in the record regarding the reputation of the authors of two of the three articles. Second, the ALJ's reliance on the fact that the articles were published and subjected to some amount of peer review does not indicate that they were necessarily reliable. Cf. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593 (1993) ("Publication (which is but one element of peer review) is not a sine qua non of admissibility; it does not necessarily correlate with reliability . . . ."). Third, the substance of the articles does not strongly endorse the link between IPF and dust exposure. Instead, one of the articles reports a study that finds the incidence of IPF in coal workers to be the same as that within the general population and concludes only that there was a"possible" link between coal mining and IPF. (J.A. at 158.) Another article reported findings from a study that included only three coal workers out of 233 cases studied. Finally, several of the physicians who reviewed the articles found them to be severely lacking in appropriate sampling methods, indicating that the articles did not enjoy general acceptance within the relevant scientific community. Cf. Daubert, 509 U.S. at 594.

At best, the articles offered tepid support for Dr. Jennings's, Dr. Rose's, and the ALJ's conclusion. According to the ALJ's decision, the articles were credited solely because of their publication and related peer review. In the face of significant expert criticism, this alone is insufficient. Moreover, the ALJ's opinion offered no reasons for discrediting the criticisms of several well-qualified physicians. We

_____

of the other physicians of record." (Post at 13.) For instance, Dr. Jerome Kleinerman has served as the Director of the Department of Pathology at the Metro Campus of Case Western Reserve University, has chaired the National Institute of Occupational Safety and Health committee responsible for developing the guidelines for diagnosing coal workers' pneumoconiosis, and has authored over 160 articles appearing in peer review journals, the vast majority of which dealt with lung disease, pneumoconiosis, or emphysema. Dr. Kleinerman is board certified in clinical pathology and pathologic anatomy. In addition, Dr. Kleinerman undertook graduate studies in human pulmonary function at the University of Pennsylvania Graduate School of Medicine following his graduation from medical school.

find the criticisms quite credible, especially without any evidence of a thorough analysis by the ALJ. It is precisely the ALJ's familiarity with, and analysis of, a subject that deserves our deference and without it, we have difficulty relying upon the decision.

Furthermore, and most troubling, the sole reason offered by the ALJ for discrediting the opinions of Drs. Kleinerman, Renn, Morgan, and Fino was that "they were unable to cite any medical articles finding that there was no causal connection between IPF and coal dust exposure." (J.A. at 507.)[5] Therefore, the ALJ refuted their opinions based on a lack of published support. Considering the combined experience and credentials of these physicians compared to the thin support provided by the countervailing articles, we find this appraisal wholly unsatisfactory.[6]

III.

Because we believe that the ALJ did not fulfill his duty to fully consider the entire record and provide adequate reasons for discounting significant expert medical testimony, we vacate and remand the case for further consideration.

<u>VACATED AND REMANDED</u>

_____

[5] Although the dissent spends a great deal of time explaining the evidence that supports the award of benefits, it does not sufficiently address the primary deficiency -- that the ALJ failed to adequately explain why the opinions of several eminently qualified experts were discounted. We trust that after remand and further consideration, the ALJ's expertise in this area will result in a thorough explanation of his reasoning and eventual decision.

[6] This Court has recognized a number of these physicians' credentials in other black lung cases. <u>See, e.g.</u>, <u>Piney Mountain Coal Co. v. Mays</u>, 1999 WL 274066 at *6 (4th Cir. May 5, 1999) (Dr. Kleinerman); <u>Milburn Colliery Co. v. Hicks</u>, 138 F.3d 524, 530 (4th Cir. 1998) (Dr. Fino); <u>Sterling Smokeless Coal Co. v. Akers</u>, 131 F.3d 438, 441 n.2 (4th Cir. 1997) (Dr. Kleinerman); <u>Stiltner v. Island Creek Coal Co.</u>, 86 F.3d 337, 340 (4th Cir. 1996) (Dr. Renn).

MURNAGHAN, Circuit Judge, dissenting:

Theodore Latusek filed an application seeking disability benefits under the Black Lung Benefits Act, 30 U.S.C.A. §§ 901-945 (West 1986 & Supp. 1999), for a pulmonary disability suffered as a result of his employment as a coal miner for Consolidation Coal Company ("Consolidation"). The administrative law judge ("ALJ") awarded benefits to Latusek, and the Black Lung Benefits Review Board affirmed the award. Consolidation now appeals, arguing primarily that the administrative law judge failed to analyze properly the relevant medical evidence. Because there is substantial evidence in the record supporting the decisions of the ALJ and the Benefits Review Board, I dissent from the majority opinion and vote to affirm.

I.

Theodore Latusek, Jr., Respondent-Claimant, was employed as an underground coal miner for a period of 24 years by Petitioner, Consolidation Coal Company, during which time he was exposed to large amounts of mine dust including coal, solid rock and sandstone. During a work-related physical examination, Latusek's lung condition was first noticed by the company physician who indicated that Latusek had some pulmonary problems. In 1991, Latusek was examined by Dr. Roger Abrahams who observed dense Velcro rales in Latusek's lungs, a dry cough, mild wheezing, and dyspnea on exertion. Dr. Abrahams diagnosed Latusek with possible early interstitial fibrosis. He concluded that Latusek's cough might be due to industrial bronchitis or interstitial changes.

Latusek was later referred to Dr. Joseph Renn, III, who assumed care of the patient in 1992. Dr. Renn ordered a lung biopsy and subsequently diagnosed Latusek as suffering from interstitial pulmonary fibrosis ("IPF") and coal worker's pneumoconiosis. Dr. Renn prescribed Prednisone and later Cytoxan, but Latusek's condition continued to deteriorate. Dr. Renn then referred the patient to the National Jewish Center for Immunology and Respiratory Medicine ("National Jewish") in Denver, Colorado, one of the best known centers for the study of interstitial pulmonary fibrosis. At the facility, Latusek was treated by Dr. Constance Jennings in October 1993. Following her initial evaluation of Latusek, she instituted Solu-Medrol therapy and

9

recommended that he be removed from further exposure to coal mine dust. The patient was also evaluated at National Jewish by Dr. Cecile Rose, an occupational medicine physician, who diagnosed coal worker's pneumoconiosis and idiopathic pulmonary fibrosis. Based upon the advice of Dr. Jennings, Latusek ceased exposure to coal mine dust and took a disability retirement effective April 30, 1994. While he remains a candidate for lung transplant, Latusek's condition has since stabilized.

On July 5, 1994, Latusek filed a claim for federal black lung benefits. His claim was initially denied by a claims examiner; however, benefits were awarded by the district director on May 12, 1995. Consolidation requested a formal ALJ hearing on that determination.

During the course of litigation, several physicians were deposed, including Drs. Jennings and Rose. Dr. Jennings testified that Latusek's IPF arose as a result of the patient's exposure to silicate dust in the coal mines. In pertinent part, she testified that, in studies of more than 350 patients conducted at National Jewish, the median age of individuals prone to develop IPF is 66 years, with 90 percent of the patients being 50 years or older. Dr. Jennings stated that the researchers "almost never" saw a patient in his 30s, suggesting that Latusek's age at the onset of his IPF, 39 years, is highly unusual. Dr. Jennings further testified that, in addition to the unusually early age of onset, other factors suggest that Latusek's condition is linked to his work in the coal mines: his heavy exposure to silicates, or coal mine dust; the finding of simple coal worker's pneumoconiosis in combination with that exposure; evidence of emphysema in a non-smoker; and an unusually elevated cell count in his lungs, evidencing the presence of some irritant in the lungs.

Dr. Rose's testimony supported the conclusions of Dr. Jennings. She acknowledged that "the lesion of [IPF] in the context of coal worker's pneumoconiosis may not be common" but maintained that "given the atypical nature and presentation of[Latusek's] IPF lesion ... his history of coal mine dust exposure and the associated finding of simple coal worker's pneumoconiosis with emphysema," Latusek's development of IPF was associated with his occupational dust exposure to a degree of reasonable medical probability.

10

The conclusions of Drs. Jennings and Rose are further supported by the findings of Dr. Koichi Honma of the Department of Pathology, Dokkyo University School of Medicine in Japan, who is recognized as having extensive experience in silicosis-induced lung disease. During Latusek's course of treatment at National Jewish, Dr. Jennings contacted Dr. Honma. Dr. Honma reviewed the biopsy slides and issued a report to Dr. Jennings which concluded that the interstitial fibrosis seen in the patient represented a dust-related disorder.

On June 26, 1997, the ALJ issued a decision awarding benefits to Latusek. On review, the Benefits Review Board affirmed the award. Consolidation now appeals, arguing primarily that the ALJ failed to analyze properly the relevant medical evidence. I disagree with Consolidation's contention and, contrary to the majority's position, would affirm the award of benefits to Mr. Latusek.

II.

In considering decisions of the Benefits Review Board, we "`review only for errors of law, and to make certain that the Board adhered to its statutory standard of review of factual determinations.'" Doss v. Director, OWCP, 53 F.3d 654, 658 (4th Cir. 1995). The Court of Appeals must affirm the Benefits Review Board "if [the Board] properly determined that the [administrative law judge's] findings are supported by substantial evidence, keeping in mind that `a reviewing body may not set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis.'" Doss, 53 F.3d at 659; see also Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1195 (4th Cir. 1995) (noting that appellate court "must affirm the ALJ's factual findings and weighing of the medical evidence where these conclusions ... are supported by substantial evidence"); Tackett v. Cargo Mining Co., 12 Black Lung Rep. 1-11 (1988) (en banc) ("The Board must affirm the findings of the administrative law judge if they are supported by substantial evidence, are rational, and are in accordance with applicable law."). "Substantial evidence" requires "`more than a mere scintilla,'" but only "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998); see also Doss, 53 F.3d at 659 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

11

In order to establish entitlement to benefits, the claimant must establish that (1) he suffers from pneumoconiosis; **1** (2) the pneumoconiosis arose out of coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) the pneumoconiosis is a contributing cause of his total disability. See 20 C.F.R. §§ 718.201-718.204 (1998); Hicks , 138 F.3d at 529. The parties stipulated at hearing that Latusek suffers from pneumoconiosis arising out of coal mine employment and that he has a totally disabling pulmonary impairment. Therefore, to establish his claim to benefits, Latusek need only prove by a preponderance of evidence that the pneumoconiosis is a contributing cause of his total disability. See 20 C.F.R. § 718.204(b); Robinson , 914 F.2d at 38. To be a contributing cause, the claimant's coal mining must be "a necessary condition of his disability. If the claimant would have been disabled to the same degree and by the same time in his life if he had never been a miner, then benefits should not be awarded." Robinson, 914 F.2d at 38.

As the ALJ noted, all the expert witnesses agree that Latusek's total disability is due to IPF. The witnesses provided conflicting assessments, however, as to the cause of the disability. Drs. Rose, Jennings, and Honma concluded that the IPF is the result of exposure to coal mine dust, while Drs. Joseph Renn, Gregory Fino, W.K.C. Morgan, Samuel Spagnolo, Jerome Kleinerman, and Richard Naeye suggested that there is no basis to link IPF to such exposure. When physicians provide conflicting opinions as to the etiology of impairment, an ALJ must provide a rationale for choosing one opinion over another. See Hicks, 138 F.3d at 533 (finding error where ALJ failed to explain why he credited certain evidence and discredited other evidence). That is precisely what the ALJ did here. He considered and analyzed all the relevant evidence and then explained his rationale in

_____

**1** The Act defines "pneumoconiosis" as a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C.A. § 902(b); see also 20 C.F.R. § 718.201. As the Fourth Circuit has explained, "this broad definition `effectively allows for the compensation of miners suffering from a variety of respiratory problems that may bear a relationship to their employment in the coal mines.'" Robinson v. Pickands, Mather & Co., 914 F.2d 35, 39 (4th Cir. 1990).

crediting certain evidence and discrediting other evidence. See Hicks, 138 F.3d at 528 ("In determining whether substantial evidence supports the ALJ's factual determinations, we must first address whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence.").

The judge found that Dr. Jennings' opinion, supported by the opinions of Drs. Rose and Honma, outweighed the other medical testimony and was sufficient to establish that Latusek's coal mine employment significantly contributed to his total disability. He detailed Dr. Jennings credentials which, although challenged by Petitioner, are indisputably superior to those of the other physicians of record.[2] While the other, impressively qualified physicians have treated patients with IPF, Dr. Jennings specializes in interstitial lung disease. Moreover, it is undisputed that Latusek was referred to National Jewish, where he came under Dr. Jennings' care, by Dr. Renn because of the Center's expertise in treating patients with IPF. Dr. Jennings' superior qualifications were, thus, a proper basis for crediting her testimony over that of the other physicians. See Hicks, 138 F.3d at 536 (stating that "experts' respective qualifications are important indicators of the reliability of their opinions").

The ALJ further explained that Dr. Jennings' opinion that Latusek's IPF was caused by his mine dust exposure is supported by three medical articles. While Consolidation challenges the research methods and findings of the articles,[3] they were subject to peer

_____

[2] Dr. Jennings attended medical school at the Mayo Clinic in Rochester, Minnesota and performed her internal medicine residency and pulmonary and critical care fellowship at the Georgetown University Hospital in Washington, D.C. She was formerly a staff member in the pulmonary branch of the National Institute of Health for two years, working exclusively with interstitial lung disease, and is the Clinical Director of the Interstitial Lung Disease Laboratory at National Jewish. Dr. Jennings is board certified in internal medicine, pulmonary diseases, and critical care medicine and has published several articles on IPF.
[3] Relying on Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and United States v. Dorsey, 45 F.3d 809, 813 (4th Cir. 1995), cert. denied, 115 S.Ct. 2631 (1995), Consolidation argues that the

13

review, as well as authored by physicians and published in publications whose reputations have not been questioned. It was absolutely proper for the ALJ to reference these articles as supportive of the conclusion of Drs. Jennings, Rose and Honma and equally appropriate for the ALJ to credit this combined evidence over contrary opinions.**4** We should not interfere with the ALJ's credibility determinations unless they are "inherently incredible or patently unreasonable." Cordero v. Triple A Machine Shop, 580 F.2d 1331, 1335 (9th Cir. 1978), cert. denied, 440 U.S. 911 (1979)); see also Bartelle v. McLean Trucking Co., 687 F.2d 34, 35 (4th Cir. 1982) (citing Cordero for same proposition). Here, the ALJ's determination is neither incredible nor unreasonable.

_____

epidemiological studies relied upon by Drs. Jennings and Rose are scientifically invalid and unreliable. Suffice it to say that Daubert and Dorsey relate to the admission of evidence before a lay jury and do not apply to black lung benefits proceedings before an ALJ. See Underwood v. Elkay Mining, Inc., 105 F.3d 946, 949-50 (4th Cir. 1997) (explaining that "[b]ecause the ALJ is presumably competent to disregard the evidence which should be excluded or to discount that evidence which has lesser probative value, it makes little sense, as a practical matter, for a judge in that position to apply strict exclusionary rules").

**4** As is required under Fourth Circuit law, the ALJ adequately explained his basis for discrediting certain evidence. In the Decision and Order, he expressly stated that he accorded Dr. Spagnolo's assessment little weight "because it does not address the question of whether there is a causal relationship between IPF and coal mine employment." He further noted that Dr. Naeye's opinion was "somewhat deficient because he did not focus on the core issue in this case, but merely stated that claimant has a chronic inflammatory disorder which did not resemble any occupational disorder he could recognize." A review of the record suggests that the ALJ is factually correct on both points. In addition, the ALJ explicitly indicated that he credited the opinion of Dr. Jennings over that of Drs. Kleinerman, Renn, Morgan, and Fino because these doctors did not possess the degree of knowledge and expertise regarding IPF that Dr. Jennings does. As support for his contention, the ALJ cited these doctors' credentials but highlighted the fact that Dr. Jennings was employed by "the leading center for the study of IPF [and] ... has published articles on that disease process." Finally, the ALJ noted that Dr. Jennings' opinion was supported by both Dr. Rose's testimony and three medical articles.

14

All we have here is a situation where two or three more experts on one side dispute the findings of two or three fewer experts on the opposing side. As the majority recognizes, this should not be a game of counting experts' votes. Rather, the ALJ is charged with hearing the expert testimony, weighing the nature and quality of the testimony, comparing the relative expertise of the experts, measuring the support or non-support for a particular proposition in the medical community, and applying those observations to the specific facts of the patient's case. The ALJ has discharged his duty properly here, and we are in turn obliged to do our duty -- namely, affirm a decision that is supported by substantial evidence.

Given the conclusion of Drs. Jennings, Rose and Honma that Latusek's disability is due to exposure to coal mine dust, the supporting medical literature, Latusek's work history, the unusually early onset of IPF in Latusek, and the absence of other factors like smoking that may have caused the condition, the evidence in the record substantially supports the ALJ's determination that Latusek's disability was caused by exposure to coal mine dust. Having considered all the relevant medical evidence of record, the ALJ rendered a decision that is both rational and consistent with applicable law. It proceeds from substantial evidence. I would, therefore, affirm the award of benefits to Latusek.

15