**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-1589

OTHELLO T. MASSEY, survivor of and on behalf of Robert E.
Massey, deceased,

Petitioner,

v.

PEABODY COAL COMPANY; BENEFITS REVIEW BOARD; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States
Department of Labor,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(08-0467-BLA)

Argued: May 12, 2010                 Decided: July 6, 2010

Before NIEMEYER, DAVIS, and KEENAN, Circuit Judges.

Petition for review denied by unpublished per curiam opinion.

**ARGUED**: Nathan J. Marchese, WASHINGTON AND LEE UNIVERSITY
SCHOOL OF LAW, Lexington, Virginia, for Petitioner. Mark
Elliott Solomons, GREENBERG TRAURIG, LLP, Washington, D.C., for
Respondents. **ON BRIEF**: Timothy C. MacDonnell, WASHINGTON AND
LEE UNIVERSITY SCHOOL OF LAW, Lexington, Virginia, for
Petitioner. Laura Metcoff Klaus, GREENBERG TRAURIG, LLP,
Washington, D.C., for Respondents.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After working as a coal miner for 21 years, Robert Massey applied for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq., claiming that he suffered from coal-dust induced pneumoconiosis which caused him to have a total respiratory disability. When Massey died in March 2003, his wife, Othello Massey, continued Robert Massey's claim and filed an additional claim on behalf of herself for survivor's benefits.

Crediting the opinions of several doctors, the Administrative Law Judge ("ALJ") found that Robert Massey's coal workers' pneumoconiosis did not cause or contribute to his respiratory disability, nor did it cause, contribute to, or hasten his death. Accordingly, the ALJ denied benefits over the course of three separate opinions examining the medical evidence. The Benefits Review Board ("BRB") affirmed, and Othello Massey filed this petition for review. She contends that the ALJ failed sufficiently to explain his conclusions and that he applied an incorrect standard of causation for both Robert Massey's disability and his death. Because we conclude that the ALJ satisfied his duty to explain his decision, that he applied the correct standard of causation, and that substantial evidence supports his findings, we deny the petition for review.

2

Robert Massey, who smoked 50 packs of cigarettes per year since 1944, had a complicated medical history, including a history of coronary artery disease, chronic obstructive pulmonary disease ("COPD"), pneumoconiosis, peptic ulcer disease, chronic problems with his right knee, a history of transischemic attacks, colon cancer, a lumbar laminectomy, and a bilateral hernia repair. In 2003, he was diagnosed with bone cancer and myelodysplastic syndrome, a disease characterized by damage to the bone marrow, which makes it incapable of producing enough white or red blood cells to fight off infection. He died in March 2003 from complications due to pneumonia and his myelodysplastic syndrome.

Massey first applied for black lung benefits in May 1996, and his claim was referred to an ALJ, who awarded benefits. On appeal, however, the BRB determined that the ALJ had overlooked evidence contradicting Massey's claim, particularly x-ray evidence that tended to show that Massey did not have pneumoconiosis, and remanded the case for reconsideration of that evidence. The BRB also vacated the ALJ's conclusion that Massey had proven that pneumoconiosis caused his total disability. It affirmed, however, the ALJ's conclusion that Massey was suffering from a totally disabling respiratory disease.

On remand, the ALJ considered additional evidence and concluded that Massey suffered from pneumoconiosis but that the pneumoconiosis did not cause his respiratory disability. He concluded that smoking was the sole cause of this disability and that Massey had failed to prove that his pneumoconiosis was a contributing cause.

Massey filed a petition for modification in December 2000, submitting new evidence to support his contention that a mistake had been made. The ALJ examined the new evidence, together with the original evidence, and concluded that his earlier finding that Massey had pneumoconiosis was no longer supportable and that Massey had in fact failed to prove that he had pneumoconiosis. The ALJ also concluded that because Massey did not establish that he suffered from pneumoconiosis, he clearly did not establish that his respiratory impairment was caused by pneumoconiosis.

After Robert Massey died in March 2003, Othello Massey, his wife, submitted a claim for survivor's benefits. She also continued pursuing her husband's disability claim. The two claims were consolidated and assigned to a new ALJ, who received new evidence in the form of an autopsy of Massey's lungs and additional medical reports.

Dr. Tomislav M. Jelic performed the autopsy and found that Massey had "coal worker's pneumoconiosis, chronic silicosis,

4

extensive interstitial fibrosis, marked emphysema, acute exacerbation of chronic bronchitis, extensive adhesions between the lung and chest wall, as well as acute and organizing pneumonia." Dr. Jelic concluded that pneumoconiosis was a contributing factor to Massey's death.

Two other pathologists, Dr. Francis H.Y. Green and Dr. Richard L. Naeye, also examined Robert Massey's lung tissue and reached opposite conclusions from one another. Dr. Green concluded that Massey had two forms of pneumoconiosis -- simple coal worker's pneumoconiosis and "dust-induced chronic obstructive pulmonary disease comprising both chronic bronchitis and emphysema." He concluded that "pneumonia was the immediate cause of death and that the risk factors for this included the myelodysplastic syndrome as well as the COPD and pneumoconiosis." In Dr. Green's opinion, "pneumoconiosis was the major causal factor in Mr. Massey's death and . . . cigarette smoking and the myelodysplastic syndrome were significant factors contributing to death."

Dr. Naeye disagreed with much of Dr. Green's analysis, detecting only "minimal findings of coal workers' pneumoconiosis," which he believed was consistent with the medical record developed during Robert Massey's lifetime. Dr. Naeye did find severe emphysema and a previous rupture of the alveolar walls in the lungs, which he believed Dr. Green may

have mistaken for interstitial fibrosis. But Dr. Naeye did not believe that Robert Massey's coal worker's pneumoconiosis contributed to his emphysema or respiratory disability in any way. Rather, he believed that the emphysema was caused exclusively by Massey's history of smoking, noting that "[c]igarette smoking makes a several-fold greater contribution to the genesis of [emphysema and chronic bronchitis] than does prolonged exposure to coal mine dust." Dr. Naeye concluded:

> Taking all of these findings into consideration there is no possibility that [coal worker's pneumoconiosis] caused any disability or contributed in any way to the disability or death of Robert Massey. His death was entirely the consequence of a myeloproliferative disorder that has not been linked to occupational exposures to coal mine dust. Whatever abnormalities he had in lung function were almost certainly the consequence of his heavy cigarette smoking that continued until the last years of his life.

J.A. 852.

In addition to the pathology reports, Othello Massey presented the ALJ with the opinions of Drs. Robert Cohen and Donald Rasmussen, in which they concluded that Robert Massey's lung impairment was caused by inhalation of coal dust and that this predisposed him to develop the pneumonia that ultimately caused his death. The employer, Peabody Coal Company, presented the contrasting opinions of Drs. George Zaldivar, Joseph Renn, Gregory Fino, and Ben Branscomb, all of whom acknowledged that Robert Massey had a lung impairment but found that this

6

impairment was attributable solely to his history of smoking and that the lung impairment nonetheless did not contribute to his death.

After reviewing the autopsy report, the two other pathologists' opinions, and the additional medical opinions and testimony, the ALJ found that the autopsy of Massey's lungs performed after his death clearly established that Massey had clinical coal workers' pneumoconiosis. But he also found that Massey's COPD, consisting of emphysema and chronic bronchitis, was due exclusively to Massey's history of smoking rather than his coal dust exposure. The ALJ explained that he found the opinions of Drs. Zaldivar, Renn, Fino, and Branscomb more persuasive than those of Drs. Cohen, Rassmusen, and Green because their opinions "did not rely on theoretical possibilities or unsupported mathematical formulas to support their findings but referred to specific medical data relating to the miner." The ALJ found that the opinions of Drs. Rasmussen, Cohen, and Green only relied on the fact that some medical studies showed that coal dust can cause COPD, and "made no effort to analyze the medical data in this case to determine if the miner's obstructive lung disease [was] related to his coal mine dust exposure."

The ALJ also found that Robert Massey's clinical pneumoconiosis was not the cause of his total respiratory

7

disability, nor did it cause, contribute to, or hasten Massey's death. As to disability causation, the ALJ found that the opinions of Drs. Rasmussen and Cohen were not persuasive because Dr. Rasmussen's opinion "was based on theoretical possibilities" and Dr. Cohen's opinion "focused primarily on the miner's emphysema, which [the ALJ had] previously determined was due exclusively to cigarette smoking." And as to death causation, the ALJ first rejected the opinion of Dr. Jelic because his qualifications were not in the record and because he did not provide any basis for his opinion. The ALJ then explained that he was crediting the opinion of Dr. Naeye over that of Dr. Green because Dr. Green did not distinguish between Massey's clinical pneumoconiosis and his COPD in giving the opinion that Massey's lung disease contributed to his death. Because the ALJ had already found that Massey's COPD was caused exclusively by his smoking, he determined that Dr. Green's "opinion does not meet the criteria for establishing that the miner's death was due to pneumoconiosis."

Massey appealed the ALJ's opinion to the BRB, and the BRB vacated the order on the ground that the ALJ had failed adequately to explain why he had discounted the opinions of Drs. Green and Cohen on whether coal dust exposure contributed to Massey's COPD.

On remand, the ALJ again considered the opinions of Drs. Cohen and Green and again concluded that the evidence did not establish that Robert Massey's COPD was due to his coal-mining employment. The ALJ explained that he had reconsidered the opinions of Drs. Cohen and Green, and "acknowledge[d], as the Board indicated, that both physicians have provided some basis for their opinions." Nonetheless, the ALJ explained that he still found their opinions "less well reasoned and well documented than the opinions of Drs. Zaldivar, Renn, Fino, and Branscomb" and that "the opinions of Drs. Zaldivar, Renn, Fino, and Branscomb [were] better supported by the objective medical evidence of record than the contrary opinions of Drs. Cohen and Green." He explained that Dr. Cohen's opinion was based on the claim that centrilobular emphysema is a form of focal emphysema, which was associated with coal dust exposure, whereas Drs. Naeye and Zaldivar asserted, even though they too had observed centrilobular emphysema, that this was not a form of focal emphysema and that it was typical of and primarily caused by smoking. While none of the doctors cited any medical literature to support their findings, the ALJ explained that he found that the corroborating opinions of Drs. Naeye and Zaldivar outweighed the opinion of Dr. Cohen. The ALJ concluded:

> After reviewing all of the evidence, I find that the weight of the evidence does not support a finding that the miner had legal pneumoconiosis. While all of the

9

physicians who rendered an opinion in this case found that the miner suffered form a severe respiratory impairment, only Drs. Rasmussen, Cohen, and Green attributed the miner's emphysema to a combination of both coal mine dust exposure and smoking. Drs. Zaldivar, Renn, Fino, and Branscomb, on the other hand, found that the miner's COPD resulted from his long and heavy smoking history. Dr. Cohen has failed to provide any support for a finding of legal pneumoconiosis, and Dr. Green's analysis of the causes of the miner's COPD is contrary to the medical literature. As a result, I find that the opinions of Drs. Zaldivar, Renn, Fino, and Branscomb, are well reasoned and documented, and, therefore, outweigh, the opinions of Drs. Green and Cohen, which are less well reasoned and well documented.

J.A. 1415.

Finally, because his finding that Massey did not have legal pneumoconiosis did not change upon reconsideration of the opinions of Drs. Green and Cohen, the ALJ held that his "original findings of disability causation and death causation [remained] unaffected," and, accordingly, he again denied benefits.

Following this denial, Othello Massey filed a motion for reconsideration which prompted the ALJ to issue yet another decision, giving additional reasons for rejecting the opinions of Drs. Green and Cohen. The ALJ found significant the fact that Drs. Green and Cohen could not distinguish the effects of smoking and coal dust exposure on developing COPD, while the other doctors could do so, explaining, "The ability of Drs. Renn, Fino, Zaldivar, and Branscomb to distinguish the effects

10

of cigarette smoke from coal mine dust casts doubt on the assertions of Drs. Green and Cohen that the effects are indistinguishable, and further calls into question their findings that both coal dust and cigarette smoke are causing the miner's pulmonary impairment." The ALJ also found it significant that Drs. Green and Cohen conclusively ruled in coal dust exposure, but not smoking, as a cause of Robert Massey's COPD, even as they noted that "the effects of smoking and coal dust [were] indistinguishable." Finally, the ALJ held that "Drs. Green and Cohen have failed to reconcile their opinions on the cause of the miner's pulmonary impairment with some of the objective medical evidence of record," including the facts that some pulmonary function studies showed that Robert Massey's condition was partially reversible and that Massey continued to smoke heavily for years after he ceased working in the coal mines. The ALJ summarized his findings as follows:

> I find that the well reasoned and well documented opinions of Drs. Fino, Renn, Zaldivar, and Branscomb are entitled to greater weight than the contrary opinions of Drs. Green and Cohen. The opinions of Drs. Renn, Fino, Zaldivar, and Branscomb are consistent with the miner's extensive smoking history, continuing after he ceased his exposure to coal dust, and the reversibility of some of the pulmonary function studies. Furthermore, all these physicians explained how the symptoms the miner exhibited were consistent with a smoke induced pattern of pulmonary impairment, which allowed them to rule out coal dust as a causative factor. Specifically, significant weight is given to the opinion of Dr. Renn who cited the miner's pulmonary function studies as producing

11

results typical of a pulmonary disease caused by cigarette smoking. Significant weight is also given to the opinion of Dr. Zaldivar, as he treated the miner for his pulmonary condition on multiple occasions from 1991 to 2003. See, 20 C.F.R. § 718.204(c)(1). The foundations upon which Drs. Green and Cohen have based their opinions have been called into question by the reports of these physicians. Furthermore, the opinions of Drs. Green and Cohen are internally inconsistent as they claim to be unable to distinguish the effects of coal dust from those of smoking, yet they question smoking as a causative factor despite the fact that the miner had a heavy smoking history that continued long after his exposure to coal dust ceased. As such, the opinions of Drs. Green and Cohen are entitled to little weight. I find that the Claimant has failed to demonstrate the presence of legal pneumoconiosis.

J.A. 1422.

In this additional decision, the ALJ also addressed the causation arguments, explaining that Dr. Green had not provided an opinion on the cause of Robert Massey's respiratory disability and that, to the extent that Dr. Cohen provided such an opinion, he focused on the effects of Mr. Massey's emphysema, which had already been determined to have been caused by smoking rather than by coal dust exposure. With respect to the cause of death, the ALJ explained that because Dr. Cohen was not a pathologist, his opinion deserved little weight. The ALJ recognized that Dr. Green was a pathologist but noted that Dr. Green failed to distinguish between the effects of Massey's clinical pneumoconiosis and his COPD.

12

Othello Massey appealed this decision to the BRB, which affirmed. The BRB held that the ALJ had adequately explained why he rejected the opinions of Drs. Cohen and Green and that the ALJ's rejection of these doctors' opinions was proper. The BRB also held that the ALJ had appropriately determined that Dr. Cohen did not identify clinical pneumoconiosis as a contributing cause in Robert Massey's disability or death and that to the extent Dr. Cohen provided an opinion on these issues, he focused on Massey's emphysema, which had already been determined not to have been caused by coal dust. And finally, the BRB affirmed the ALJ's conclusion that Dr. Green's testimony did not establish that Massey's clinical pneumoconiosis contributed to his death, explaining that "because Dr. Green referred to simple coal workers' pneumoconiosis and COPD jointly as contributing causes of the miner's death, he did not identify simple pneumoconiosis, standing alone, as a condition that hastened the miner's death."

From the BRB's order denying benefits, Massey appealed, contending that the ALJ "failed to satisfy his statutory duty to explain the basis of his decision denying benefits," as required by the Administrative Procedure Act ("APA"), 5 U.S.C. § 557(c)(3)(A). Massey also contends that the ALJ "failed to employ the proper standard in assessing the issues of causation

13

of total disability and death," focusing her criticism primarily on the ALJ's rejection of Dr. Green's opinions.[*]

## II

Our review of findings of fact in a claim for benefits under the Black Lung Benefits Act is deferential. "The ALJ is charged with making factual findings, including evaluating the credibility of witnesses and weighing contradicting evidence,"

---

[*] Peabody Coal argues in its brief that we lack subject matter jurisdiction to consider Massey's appeal because Massey listed the ALJ's order of November 20, 2007, on her notice of appeal to the BRB rather than the ALJ's order of February 22, 2008, which was issued in response to Massey's motion for reconsideration of the earlier order.

While a notice of appeal must contain the date of filing of the decision or order appealed and the date on which a motion for reconsideration was filed if any, see 20 C.F.R. § 802.208(a), the regulations also provide that, notwithstanding the required elements, "any written communication which reasonably permits identification of the decision from which an appeal is sought and the parties affected or aggrieved thereby, shall be sufficient notice for purposes of § 802.205." Id. § 802.208(b).

In this case, Massey's notice of appeal did not identify the correct order from which she was appealing to the BRB, but we conclude that it is reasonably clear from the notice of appeal and the circumstances of this case that Massey intended to appeal the final decision of the ALJ denying her benefits. Peabody Coal has not claimed that it was unaware of Massey's intentions, nor has it claimed that it suffered prejudice from the misstatement. Massey's notice of appeal "reasonably permit[ted] identification of the decision from which an appeal [was] sought" and was therefore sufficient notice of appeal, notwithstanding the error in identification of the date of the order. Accordingly, we conclude that the BRB had jurisdiction and that we therefore also have jurisdiction to decide Massey's appeal on the merits.

14

Doss v. Dir., OWCP, 53 F.3d 654, 658 (4th Cir. 1995), and our role on appeal "simply is to determine whether substantial evidence in the record as a whole supports the ALJ's decision," Harris v. Dir., OWCP, 3 F.3d 103, 106 (4th Cir. 1993). Substantial evidence is "more than a mere scintilla," and is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). "In determining whether substantial evidence supports the ALJ's factual determinations, we must first address whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence." Hicks, 138 F.3d at 528. But in the end, we may neither "'redetermine the facts nor substitute our own judgment for that of the ALJ.'" Harris, 3 F.3d at 106 (quoting Freeman United Coal Mining Co. v. Benefits Review Bd., 919 F.2d 451, 452 (7th Cir. 1990)).

For her APA challenge, Massey contends that the ALJ (1) "failed to explain on what basis he concluded that Dr. Cohen's opinion was entitled to less weight than the opinions of Drs. Zaldivar and Naeye"; (2) "inadequately explained his finding that the opinion of Dr. Green was based on an unreasoned dose response ratio"; (3) "failed to explain his conclusion that the

15

opinions of Drs. Green and Cohen were internally inconsistent because they could identify coal mine dust exposure as a cause of Mr. Massey's respiratory impairment, but could not distinguish the effects of coal mine dust from those of smoke"; (4) "inadequately explained his finding that Drs. Green and Cohen failed to account for all of the objective medical evidence"; and (5) "failed to explain why he afforded greater weight to the opinion of Dr. Zaldivar as Mr. Massey's treating physician."

It is true that the APA requires that the ALJ include a statement of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record," as well as "the appropriate rule, order, sanction, relief or denial thereof." 5 U.S.C. § 557(c)(3). This "duty of explanation," however, "is not intended to be a mandate for administrative verbosity or pedantry." Piney Mt. Coal Co. v. Mays, 176 F.3d 753, 762 n.10 (4th Cir. 1999). Rather, "[a]n adequate explanation can be a succinct one; the APA neither burdens ALJs with a duty of long-windedness nor requires them to assume that we cannot grasp the obvious connotations of everyday language." Lane Hollow Coal Co. v. Dir., OWCP, 137 F.3d 799, 803 (4th Cir. 1998). Thus, as long as "a reviewing court can discern 'what the ALJ did and why he did it,' the duty of explanation is satisfied." Mays, 176

16

F.3d at 762 n.10 (quoting Lane Hollow Coal Co., 137 F.3d at 803).

Based on our review of the record as a whole, we conclude that the numerous explanations provided by the ALJ for his conclusions are sufficient to satisfy the APA. In three separate opinions, the ALJ explained the conclusions that he drew from the medical evidence presented to him, the evidence on which he was relying in drawing those conclusions, and the reasons he found the opinions of some doctors to be more persuasive than others. In fact, following the BRB's order to explain more fully the basis on which he was rejecting the opinions of Drs. Green and Cohen, the ALJ devoted two additional opinions almost exclusively to this question. The APA does not require explanations for explanations for explanations, ad infinitum. See Mays, 176 F.3d at 762 n.10. Rather, once an ALJ has provided an explanation for his actions such that it is clear "'what [he] did and why he did it,'" the duty of explanation is satisfied. See id. (quoting Lane Hollow Coal Co., 137 F.3d at 803). The adequacy of the explanation provided is tested only deferentially, and it must be affirmed as long as it is supported by substantial evidence, or "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hicks, 138 F.3d at 528 (quoting Consolidated Edison Co., 305 U.S. at 229).

17

In this case, the ALJ clearly fulfilled this duty of explanation. While Massey may not agree with the conclusions, she cannot be left wondering "what the ALJ did and why he did it." Lane Hollow Coal Co., 137 F.3d at 803. This is all that the APA requires. Because these conclusions are also supported by the testimony of several doctors, whose opinions corroborate each other and are consistent with the objective medical evidence in the record, it is clear that they are supported by substantial evidence.

Massey also challenges the legal standard applied by the ALJ, arguing that the ALJ "failed to employ the proper standard in assessing the issues of causation of total disability and death." On this issue, she also focuses her criticism on the ALJ's rejection of Dr. Green's opinions.

Again, our review of the record as a whole leads us to conclude that the ALJ applied the correct standard in determining that pneumoconiosis did not cause or contribute to Robert Massey's disability or cause, contribute to, or hasten his death and that this conclusion was supported by substantial evidence.

For the reasons given, we therefore deny Othello Massey's petition for review.

IT IS SO ORDERED.

18